**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Robert W. BRADFORD, Defendant-Appellant.**

**No. 77–5460**
**Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

April 27, 1978.

John R. Martin, Asst. Federal Public Defender, Atlanta, Ga., for defendant-appellant.

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

**1352**

William L. Harper, U. S. Atty., Gale McKenzie, Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before RONEY, GEE and FAY, Circuit Judges.

GEE, Circuit Judge:

Appellant was tried and found guilty on five counts of conspiracy and wire fraud. One Bertsil Smith was a codefendant, but his case was severed when he did not appear for trial. Appellant was sentenced to a total of two years imprisonment and five years probation.

Smith and appellant were charged with defrauding Dr. James Smith of Georgia of two $5,000 Picayne, Mississippi, Industrial Development Revenue Bonds. Smith called Dr. Smith and told him the bonds were in a precarious position and that he would give him $8,000 for them. Smith stated appellant was collecting bonds in the southeast and would be by to pick them up. This was in early July of 1976. Appellant arrived, took possession of the bonds, and told Dr. Smith that a check would be in the mail within five days. When the money was not forthcoming, Dr. Smith was informed that appellant had the bonds. In actuality, Smith and appellant had made an arrangement with a Mr. Walls, a security dealer in Memphis. Walls' firm would not deal directly with appellant, so the bond was sold to a Mr. Hughes of Sledge, Mississippi. Since the transaction was earlier than planned, Hughes paid $7,756.67 for the bonds. Hughes then sold the bonds to Walls' firm, Carty & Co., for $8,300. They in turn sold the bonds to another dealer for $9,300.

The bonds were received from Dr. Smith on July 10. The bonds were sold to Hughes on July 13. Dr. Smith called several times and had his attorney call, but he never received his money. In August, Smith told Dr. Smith that the bonds were in Texas and had been frozen. When the bonds were sold to Hughes, Walls received a $500 commission, and appellant received $3,100. After Carty & Co. was questioned about the bonds, Walls spoke to appellant and Smith. They told him not to worry, that they had talked to Dr. Smith and were going to get him his money.

The other transaction charged in the indictment concerned one James E. Brown. Brown had previously purchased six $5,000 Washington County Utility District bonds from appellant. On May 6, 1974, appellant phoned Brown and proposed that the bonds be swapped for bonds that would improve Brown's income. Appellant told Brown that since he had exhausted his line of credit with the Union Planter's Bank of Memphis the bonds should be sent without a sight draft. Appellant never had any line of credit with that bank. The bonds were received by appellant on May 16, as indicated by a postal receipt. On that day appellant sold one of the bonds to a Mr. Lamberson for $2,650.

Brown called appellant on June 6, since it was two weeks past the date for the bond swap. Appellant suggested that the swap be cancelled, and Brown agreed to this. On June 21, Brown received five of his six bonds. When called, appellant stated his secretary had made a mistake. Later calls resulted in more excuses, that appellant had been in a car accident, that the bond had been missent to a client in Arkansas, etc. Brown never received his money or his bond. Appellant claimed that Brown owed him $3,500 from a previous deal that was cancelled. Testimony established that the actual loss of commission to appellant on the cancelled deal was $48.

Evidence of two other transactions that occurred in this same time period was admitted to show intent. The jury was instructed as to the limited purpose for which the testimony was being admitted. The evidence showed that on May 14, 1974, one Carl Nelson of Dublin, Georgia, was called by appellant from Memphis. Nelson had had previous dealings with appellant. Appellant told Nelson he was a licensed broker to handle bonds, that he had been engaged by Mario Andretti to obtain Ontario, California, Motor Speedway bonds so that Andretti could control the speedway. Nelson

had three $5,000 bonds for which appellant stated he would pay $10,200. The bonds were received on May 18, as evidenced by a postal receipt. The bonds were sold to Carty & Co. on June 12, for $2,400. Nelson never received his bonds or his money even though he requested them several times. Appellant was not licensed to deal in bonds.

The other transaction commenced on July 8, 1974, when appellant called a Robert Lessenberry in Glasgow, Kentucky, concerning bonds that Lessenberry had for the Mobile, Alabama, Medical Clinic Board. Lessenberry was told that the bonds were in trouble but that appellant had put together a group of Florida doctors who wanted to buy the bonds if Lessenberry would send them in immediately. The bonds were received by appellant on July 11 and sold to Lamberson the next day for $2,650. The bonds had a face value of in excess of $6,000. When Lessenberry inquired about his bonds appellant told him he had experienced difficulty putting the deal together. In August appellant stated he still had the bonds. Lessenberry never received his bonds or his money.

Appellant testified on his own behalf, stating that he was operating under Smith's instructions with respect to the Dr. Smith transaction. As to the Brown deal, he stated Brown owed him money from the previously cancelled deal, and this would be his only chance to recoup that money. He stated that he had no intent to deceive Brown. As to the Nelson and Lessenberry transactions, he admitted selling their bonds but asserted that he had been too embarrassed about the low price and his bad judgment to remit the money to them. He admitted keeping all the money. He denied having claimed to represent Mario Andretti. He also denied having any communications with Nelson and Lessenberry after he sold their bonds. He also admitted lying to the grand jury after he sold their bonds.

Appellant now asks us to reverse his conviction because the other crimes, the Nelson and Lessenberry transactions, were so dissimilar to the offenses charged in the indictment that the district court's admitting evidence of those crimes denied him a fair trial. We affirm.

 Federal Rule of Evidence 404(b) applies to this case:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Here the evidence was admitted to show appellant's intent to defraud. The standard for admission of such evidence has been stated repeatedly. For example, in *United States v. Taglione*, 546 F.2d 194, 199 (5th Cir. 1977), we stated:

> Before an exception to the general rule may be invoked, the trial court must be satisfied that several prerequisites have been met: (1) there is plain, clear and convincing evidence of a prior similar offense, (2) the prior offense is not too remote in time, (3) intent is a material issue in the instant case, and (4) there is substantial need for the probative value of the evidence.

*See United States v. Herzberg*, 558 F.2d 1219 (5th Cir. 1977); *United States v. Myers*, 550 F.2d 1036 (5th Cir. 1977).[1] After these threshold prerequisites are met, the court must determine if the probative value of the evidence is outweighed by its prejudicial effect.

Appellant argues the Nelson and Lessenberry transactions were not similar to the Dr. Smith transaction, because Bertsil Smith was in charge of the Dr. Smith deal and had nothing to do with Lessenberry or Nelson. He argues that the Brown transaction was dissimilar because it involved a bond swap, not a cash deal. He also argues that the Nelson and Lessenberry deals involved representations that the bonds were

---

1. The continuing vitality of these "thresholds" is presently before the court en banc on the rehearing of *United States v. Beechum*, 555 F.2d 487 (5th Cir. 1977), but whatever disposition of them is made there will not affect the outcome here. This evidence was admissible even under the tests of *Beechum*.

about to go into default, and there was no such representation to Brown.

Appellant ignores the fact that the Nelson and Lessenberry transactions occurred at the same time as the Brown deal. The method was the same in all transactions. Appellant would telephone the bond owners, state that the bonds were going to go into default or that their value could be increased. The owner was advised that if he mailed the bonds to appellant, he would receive his money by return mail. Appellant continued to assure owners that they would receive their money and that he had the bonds long after they had been sold. The telephone calls were shown to be interstate by means of the telephone company records.

To prove wire fraud the government must show a scheme, use of interstate communications, and intent. The testimony of Nelson and Lessenberry, plus appellant's denial of intent to defraud, was offered outside the presence of the jury before it was admitted. Once appellant denied intent to defraud, the need for the evidence was shown. The fact that the other offenses were closely connected in time and nature to the offense charged was very relevant on the issue of intent. *United States v. Cochran*, 546 F.2d 27 (5th Cir. 1977). Appellant had blamed the Dr. Smith offense on his confederate Smith and had attempted to justify the Brown offense as an effort to recover money owed on a previous debt. Evidence of the other offenses occurring at the same time gave the lie to these explanations. The trial court did not abuse its discretion in admitting the evidence of the other offenses.

The judgment of the district court is AFFIRMED.

---

\* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.