**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Joseph R. LENNON,
Defendant-Appellant.**

**No. 83-2713.**

United States Court of Appeals,
Fifth Circuit.

Jan. 11, 1985.

738

Olney G. Wallis, Michael A. Maness, Houston, Tex., for defendant-appellant.

Daniel K. Hedges, U.S. Atty., James R. Gough, Asst. U.S. Atty., Houston, Tex., Stephen P. Learned, Atty., Crim. Division, Fraud Section, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before RUBIN, REAVLEY and TATE, Circuit Judges.

REAVLEY, Circuit Judge:

The opinion delivered on October 31, 1984 is withdrawn and is replaced by the following.

Joseph Lennon was convicted by a jury of eight counts of causing the interstate transportation of certain check proceeds obtained by fraud in violation of 18 U.S.C. §§ 2, 2314 (1982). We reverse and remand.

Lennon was employed by Charter International Oil Company and Charter Crude Oil Company, Texas corporations and subsidiaries of Charter Oil Company, Inc., a Florida corporation, to supply Charter's oil refinery in Houston approximately 70,000 barrels of crude oil per day. To meet part of this demand, Lennon agreed on behalf of Charter to purchase crude oil from Southwest Petrochem, Inc. in late summer or early fall of 1974. As a condition to making the contract, Lennon demanded that Petrochem pay him, personally, twenty cents for each barrel he purchased for Charter. Charter neither was apprised of nor consented to the kickback arrangement.

These dealings proved to be profitable to all parties for a number of years. Charter received a large portion of its needed crude oil at a cost a little below the average it was paying other suppliers. Petrochem had a steady buyer that accounted for the vast majority of its revenues. Pursuant to the kickback agreement, Lennon received from Petrochem numerous checks that totaled approximately $1,193,000. The last kickback payment was made in March 1979, and Lennon shortly thereafter resigned from Charter. After Lennon's departure from Charter, Petrochem continued to sell crude oil to Charter but never made any more kickback payments to Lennon or anyone at Charter.

Charter initiated each sale of crude oil by a prepayment to Petrochem. Charter's checks were drawn on various banks located in Florida, Massachusetts, and Illinois. Petrochem deposited the checks in a Houston bank, which sent the checks directly to the out-of-state bank for collection. Petrochem then used those funds to purchase the crude oil from its supplier and to pay Lennon the kickback.

Petrochem paid Lennon the kickbacks by checks made to H & L Enterprises, a general partnership formed under Texas law between Lennon and his friend and business associate James Harrigan; to Harlen Trading Company, Inc., a Texas corporation with shares owned by Lennon and Harrigan; and to LATCO, an assumed business name of Lennon. The kickback checks were all drawn upon and deposited in Texas banks.

Lennon presented evidence through the testimony of Harrigan that the moneys paid to H & L, Harlen, and LATCO were not kickbacks to Lennon. According to Harrigan's testimony, the money was paid to Harrigan through Harlen, H & L, and LATCO as a commission for his own services to Petrochem.

An additional factor to be considered is the regulation of the oil industry during the 1970's and early 1980's by the federal government. Under these regulations, the price of crude oil and certain refined oil products were regulated on a cost-plus margin basis. The margin was set on a unit basis but was averaged monthly with no carryover. In other words, a reseller of crude oil or a refiner of regulated products could charge purchasers only an amount equal to its cost, expenses, and a certain

margin for profit. Although the profit might vary from barrel to barrel, the average margin during a given month could not exceed a certain amount. If the maximum average margin was not obtained in a particular month, the unrealized profit was lost and could not be recaptured by exceeding the set margin in the next month.

In this case all of Petrochem's crude oil sales were subject to the price regulations. Approximately sixty to seventy percent of each barrel of crude oil Charter purchased was refined into unregulated products. As to the crude oil it resold, Charter did not obtain the maximum profits allowed by the regulations during any month from May 1978 to March 1979, when the violations by Lennon affected Charter's profits.

The grand jury returned an indictment charging Lennon with eight counts of violating 18 U.S.C. §§ 2, 2314 (1982). Specifically, the indictment charged Lennon with causing eight checks issued in 1978 and 1979 by Charter payable to Petrochem to be transported in interstate commerce and knowing that certain proceeds of the checks were taken by fraud. The indictment listed the eight checks by date, amount, check number, and place of origin, and it charged that Lennon's purpose was to obtain money in excess of $5,000. At trial, the United States presented evidence of the exact amount of the kickback included in each of the eight checks, which varied from a low of $12,234.50 to a high of $27,-373.00.

The issues on appeal are: one, whether the applicable statutory provisions, 18 U.S.C. §§ 2(b), 2314 (1982), require knowledge or reasonable foreseeability that money obtained by fraud will be transported in interstate commerce; two, whether the trial court improperly instructed the jury on "causing" under section 2314; three, whether the trial court improperly instructed the jury on fraud under section 2314; four, whether there was sufficient evidence to support a finding of fraud; five, whether, for section 2314 to apply, all the property transported in interstate commerce must have been obtained by fraud; six, whether

the indictment was defective for failing to allege that certain proceeds exceeded $5,000 as required by section 2314; and seven, whether the trial court's jury instruction on the elements of section 2314 was improper.

**1. Knowledge or Reasonable Foreseeability**

■ Section 2314, the so-called National Stolen Property Act under which Lennon was convicted, provides in part:

> Whoever transports in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud ...

>      •       •       •       •

> Shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

18 U.S.C. § 2314 (1982). Numerous circuits have held that section 2314 does not require knowledge or reasonable foreseeability of interstate transport of the money obtained by fraud. *United States v. Strauss*, 443 F.2d 986, 988 (1st Cir.), *cert. denied*, 404 U.S. 851, 92 S.Ct. 87, 30 L.Ed.2d 90 (1971); *United States v. Mingoia*, 424 F.2d 710, 713 (2d Cir.1970); *United States v. White*, 451 F.2d 559 (6th Cir. 1971); *United States v. Ludwig*, 523 F.2d 705, 706–08 (8th Cir.1975), *cert. denied*, 423 U.S. 1076, 96 S.Ct. 861, 47 L.Ed.2d 86 (1976); *United States v. Masters*, 456 F.2d 1060, 1061 (9th Cir.1972). Furthermore, this circuit has held that knowledge or reasonable foreseeability of interstate transport is not required to convict under another paragraph of section 2314, which contains similar interstate transport wording as the paragraph under which Lennon was convicted. *United States v. Kelly*, 569 F.2d 928, 934 (5th Cir.), *cert. denied*, 439 U.S. 829, 99 S.Ct. 105, 58 L.Ed.2d 123 (1978). Lennon has cited no new authority or reason that has not previously been considered and rejected why this court should not follow other circuits and *Kelly*.

Lennon argues further that knowledge or reasonable foreseeability of interstate transport is required when the indictment and charge include, as here, the substance of 18 U.S.C. § 2(b) (1982). Section 2(b) provides:

Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

Section 2(b) applies generally to all federal criminal statutes and prohibits one from causing another to do any act that would be illegal if one did it personally. *See, e.g., United States v. Gleason*, 616 F.2d 2, 20 (2d Cir.1979), *cert. denied*, 444 U.S. 1082, 100 S.Ct. 1037, 62 L.Ed.2d 767 (1980). Section 2314, however, also contains a "causing" provision similar to section 2(b) which specifically prohibits one from causing another to transport money obtained by fraud in interstate commerce. *See, e.g., United States v. Ludwig*, 523 F.2d 705, 706 & n. 2 (8th Cir.1975), *cert. denied*, 423 U.S. 1076, 96 S.Ct. 861, 47 L.Ed.2d 86 (1976). Although we do not accept the government's contention that the "causing" under section 2(b) reaches activity not within the "causing" of section 2314, neither do we agree with Lennon's contention that by reference to section 2(b) in the indictment, the government shouldered a burden of proving knowledge or reasonable foreseeability of interstate transport. If there is a difference, it has no bearing on this case and the reference to "causing" in section 2(b) is mere surplusage to be ignored. *See United States v. Lyons*, 706 F.2d 321, 324 & n. 1 (D.C.Cir.1983).

A final basis for Lennon's argument is that "cause" under the mail fraud statute, 18 U.S.C. § 1341 (1982), requires knowledge or reasonable foreseeability that the mails will be used in commission of the fraud, and that therefore "cause" under section 2314 should as well. Lennon overlooks, however, the different purposes underlying the statutes. "[S]ection 2314 is aimed at the evils of theft, fraud, and counterfeiting and not at the regulation of inter-

state transportation. Suppression of movement of the fruits of theft and fraud is only the means to the end of suppressing theft and fraud themselves." *United States v. Roselli*, 432 F.2d 879, 891 (9th Cir.1970), *cert. denied*, 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828 (1971). On the other hand, the purpose of the mail fraud statute is to prevent the use of the mails to facilitate schemes to defraud. *Parr v. United States*, 363 U.S. 370, 389, 80 S.Ct. 1171, 1182, 4 L.Ed.2d 1277 (1960). Because interstate commerce is a means to an end for section 2314 and prohibiting unlawful use of the mails is the end of the mail fraud statute, it is perfectly reasonable that only the mail fraud statute requires knowledge or reasonable foreseeability.

**2. Jury Instruction on Causing**

Lennon contends that the trial court committed reversible error by instructing the jury:

Now, in a prosecution under Section 2314 of Title 18 for transporting in interstate commerce checks which have been taken by fraud, it is not necessary that the defendant know or intend that the checks would be transported in interstate commerce so long as he set in motion a series of events which in the normal course resulted in such transportation. Such a normal course of events occurs whenever a check drawn on an out-of-state bank travels across state lines in the process of collection and arrives for payment at the bank on which it is drawn.

Lennon first urges that the instruction was incorrect because it directed a verdict on the element of causing the checks to be transported in interstate commerce. For example, in *United States v. Johnson*, 718 F.2d 1317 (5th Cir.1983), the court held that the trial court erred by instructing the jury that a particular document was a security, an essential element of the crime. In this case, however, the challenged instruction never addressed the checks at issue. Rather, the trial correctly explained to the jury the meaning of "cause" in section 2314 as

announced in *Pereira v. United States,* 347 U.S. 1, 8–10, 74 S.Ct. 358, 363, 98 L.Ed. 435 (1954).[1]

### 3. Jury Instructions on Fraud

■ Lennon argues that the jury instructions regarding fraud were incorrect. The trial court charged:

> In order to find that the checks listed in the indictment were "taken by fraud" within the meaning of the statute you must find that the defendant knowingly and willfully and with specific intent participated in a scheme to defraud his employer, Charter.
>
> You can find this to be the case only if you find:
>
> (1) that the defendant benefited in his own right from business transactions that he caused his employer to engage in;
>
> (2) that the defendant had a duty to disclose material information to his employer;
>
> (3) that the defendant failed to disclose this information to his employer; and
>
> (4) that the defendant's failure to disclose this information to his employer caused some detriment to his employer to the extent that, had it been known, the information would have likely caused the employer to alter its business practice.
>
> Information is "material" whenever an employee has reason to believe the information would lead a reasonable employer to change its business conduct.

This instruction was based on *United States v. Ballard,* 663 F.2d 534 (5th Cir. 1981). Although *Ballard* was a mail fraud prosecution, the instruction was not limited to the particular means of the fraud or directed to the peculiarity of a particular crime. The instruction was correct.

**1.** Assuming that the instruction was a correct statement of the law, Lennon next argues the instruction was improper because it failed to require the jury to find that Lennon knew or reasonably foresaw that the money obtained by fraud would be transported in interstate commerce. This argument, however, has already been rejected.

### 4. Sufficiency of Evidence on Fraud

■ Lennon argues that there was no evidence to establish that Charter was defrauded as required by section 2314. The government presented evidence from which the jury could have concluded that Lennon defrauded Charter of money. First, Lennon extracted ten to twenty cents per barrel from Petrochem that could, and should, have benefited Charter by decreasing the cost of the crude oil. Second, lower costs would have increased profits. Third, the price control regulations would not have prevented this increase in its profits, because most of Charter's refined products were not regulated and, on the regulated products, Charter was never able to obtain the monthly average maximum per barrel profit.

■ Lennon next argues that there was no evidence of fraud, because the government never presented evidence that Charter suffered detriment in the amount of $5,000 or more for each count. Section 2314, however, requires proof only that the property taken by fraud and transported in interstate commerce have a value of $5,000 or more, 18 U.S.C. § 2314 (1982); *United States v. Freeman,* 619 F.2d 1112, 1118 (5th Cir.1980), *cert. denied,* 450 U.S. 910, 101 S.Ct. 1348, 67 L.Ed.2d 334 (1981), and that the defrauded party suffer some tangible detriment of value, *United States v. Smith,* 686 F.2d 234, 239–40 (5th Cir.1982). Section 2314 does not require the defrauded party to suffer detriment in the amount of $5,000 or more.[2] The government carried its burden by presenting evidence from which the jury could have found that Charter did suffer *some* indeterminate detriment for each kickback check and that the kickback payments to Lennon exceeded $5,000.

**2.** Ordinarily, the amount of the detriment suffered by the defrauded party will in fact be equal to the value of the transported property. Here, however, because it is impossible to prove what Charter would have done had it known of the kickback scheme, the amount of Charter's detriment is not necessarily the amount of the kickback transported in interstate commerce.

## 5. Transportation of the Fraudulently Obtained Property

Another issue raised by this case is whether section 2314 requires that all the property transported in interstate commerce be taken by fraud or merely that, of the transported property, at least $5,000 be obtained by fraud.

■ Here, the government presented evidence establishing that sums in the millions of dollars were transported in interstate commerce only part of which was obtained by fraud. For section 2314 to apply, property transported in interstate commerce having a value of $5,000 must have been obtained by fraud; this does not mean that all the property transported in interstate commerce have been obtained by fraud. *See* 18 U.S.C. § 2314 (1982); *United States v. Freeman,* 619 F.2d 1112, 1118 (5th Cir.1980), *cert. denied,* 450 U.S. 910, 101 S.Ct. 1348, 67 L.Ed.2d 334 (1981). Therefore, the government met its burden.

## 6. Defective Indictment

■ Lennon urges that the indictment was defective, because it alleged that "certain proceeds" were taken by fraud and did not allege that the proceeds exceeded $5,000 as required by section 2314. An indictment is sufficient if "it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974). Furthermore, an indictment's validity is ascertained from a reading of it as a whole and is determined by practical, not technical, considerations. *United States v. Willis,* 583 F.2d 203, 207 (5th Cir.1978).

■ Here, the indictment is sufficient under the above standard. First, each count of the indictment alleges that Lennon's purpose was to defraud Charter of money in excess of $5,000 and that "certain proceeds" were taken by fraud. If read as a whole and in a practical manner, the indictment alleged all the elements of the crime and fairly apprised Lennon of the charge against him.

## 7. Jury Instruction on Elements of Section 2314

■ The jury instruction on the elements of section 2314 stated:

Therefore, there are three essential elements which must be proved beyond a reasonable doubt in order to establish the offense proscribed by the law as applicable to this case:

First: that the defendant willfully transported or caused to be transported, in interstate commerce, checks as described in the indictment;

Second: that such checks had a value in excess of $5,000; and

Third: that at the time of the transportation the defendant knew the checks were obtained or taken by fraud.

Lennon contends that the indictment materially differed from the trial court's instructions to the jury and that the instructions permitted the jury to convict upon findings shy of what section 2314 requires. Because we agree with Lennon on the latter contention, we need not discuss the former one.

Lennon objected to the instruction on the elements of section 2314 at trial, arguing that the instruction given would allow the jury to convict if it found merely that the checks from Charter to Petrochem exceeded $5,000. Lennon specifically requested that the jury instructions include words to the effect that the portion of such checks taken by fraud must have exceeded $5,000. The government disagreed and insisted that the instruction was correct. According to the government, the whole check from Charter to Petrochem was obtained by fraud, because embedded in those checks were kickbacks obtained by fraud. Furthermore, the government argued that there was no problem with the instruction factually, because all of the kickbacks exceeded $5,000. We disagree with the government.

Under the above instruction, the jury could have convicted Lennon by finding

that the checks from Charter to Petrochem exceeded $5,000 and that any part of the checks was obtained by fraud. This is significant because of the defendant's evidence that Harrigan arranged the payments and that lesser amounts, if any, were taken by Lennon. The jury could have found that the checks from Charter to Petrochem exceeded $5,000, that most of the moneys that the government characterized as kickbacks were actually proper commissions paid to Harrigan, and that some amount out of each larger check, possibly less than $5,000, was obtained by fraud.

Section 2314 clearly requires that the fraudulently obtained property transported in interstate commerce exceed $5,000. 18 U.S.C. § 2314 (1982); *United States v. Freeman,* 619 F.2d 1112, 1118 (5th Cir. 1980), *cert. denied,* 450 U.S. 910, 101 S.Ct. 1348, 67 L.Ed.2d 334 (1981). The jury instruction erroneously permitted the jury to find that Lennon violated section 2314 by causing fraudulently obtained property having a value of less than $5,000.

Lennon's conviction is REVERSED. The cause is remanded. The petitions for rehearing are overruled. Mandate shall issue forthwith.