**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**James C. GORDON,
Defendant-Appellant.**

**No. 85–4069.**

United States Court of Appeals,
Fifth Circuit.

Jan. 16, 1986.

Fraiser, Burgoon & Abraham, James W. Burgoon, Jr., Greenwood, Miss., for defendant-appellant.

* District Judge of the Eastern District of Louisiana, sitting by designation.

George Phillips, U.S. Atty., Ruth R. Harris, Asst. U.S. Atty., Jackson, Miss., for plaintiff-appellee.

Before GEE, and JOHNSON, Circuit Judges, and MENTZ *, District Judge.

MENTZ, District Judge:

Defendant, James C. Gordon, appeals from his conviction on a three-count indictment for violations of Sections 371, 1341 and 1343 of Title 18 of the United States Code. As grounds for relief, he alleges that (1) the indictment charging conspiracy, mail fraud and fraud by wire was insufficient, (2) it was error to admit extrinsic or similar act testimony on the issue of intent, (3) defense counsel was unduly restricted in cross-examining a government co-conspirator witness, and (4) the jury was "forced" to reach a compromise verdict inconsistent with and contrary to the law and evidence.

### THE CRIME

It is alleged that defendant Gordon conspired with William Dale Blount,[1] Shirley Copeland and Thomas Lang to defraud an insurance company by having his eighteen wheeler tractor-trailer truck taken by Copeland and Lang, and cut up into parts so that he could file a theft claim with the Emmco Insurance Company and thereby collect the insurance money on it. The defendant was also charged with committing the substantive crimes of mail fraud and wire fraud by actually using (or causing to be used) the mails and the telephone in furtherance of the scheme to defraud. The defendant, James C. Gordon, was indicted in the United States District Court for the Southern District of Mississippi, along with two other defendants, William Dale Blount and Shirley S. Copeland, in a three-count indictment, for violations of

1. Blount and Gordon were co-owners of the eighteen wheeler tractor-trailer truck, however, Blount was not an EMMCO Insurance Company policy holder with Gordon.

Sections 371, 1341 and 1343, Title 18, United States Code.

## THE TRIAL

The defendant, Shirley S. Copeland, entered a guilty plea before trial and executed a "memorandum of understanding" whereby he agreed to testify in exchange for the government recommending lighter treatment and immunization from further prosecution. The defendants, James C. Gordon and William Dale Blount, were tried before a jury on November 14, 1984. The jury returned a verdict of guilty on all three counts as to defendant Gordon. Defendant Blount was acquitted on all three counts. The defendant Gordon was sentenced to a three year term of imprisonment on Count I; five years probation on Count II; five years probation on Count III, concurrent with the probation on Count II; and ordered to pay $20,000 in restitution to Emmco Insurance Company.

## SUFFICIENCY OF THE INDICTMENT

■ Gordon challenges the sufficiency of the indictment contending that it is deficient because it fails to state in detail "the facts and circumstances of the specific offense charged." [2] The indictment's most basic purpose is to fairly inform a defendant of the charge against him. Count one of Gordon's indictment, the conspiracy charge, details the predicate offenses and the overt act with great specificity. It alleges that as part of the conspiracy the defendants, Shirley Singleton Copeland, James C. Gordon, and William Dale Blount, "knowingly and willfully devise[d] and intend[ed] to devise a scheme and artifice to defraud and to obtain money by means of false and fraudulent pretenses, representations and promises" from an insurance company. It then lists the overt act alleging that Gordon and Blount had Copeland steal the 1979 White Western Star tractor, VIN JTPCPQ1030182, for the purpose of collecting insurance on the truck from Gor-

don's insurer, EMMCO Insurance Company. Gordon nevertheless contends that this count is defective because its charging portion does not set forth sufficient material facts essential to its validity under minimal constitutional standards. He also contends that the indictment is defective because each of its counts fails to set forth the essential elements of the offense charged. Finally, Gordon argues that the indictment fails to specify any means, known or unknown, by which the defendants are alleged to have committed the offenses charged.

■ An indictment is sufficient if it contains the elements of the offense charged, fairly informs the defendant what charge he must be prepared to meet, and enables the accused to plead acquittal or conviction in bar of future prosecutions for the same offense. *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590, 620 (1974); *United States v. Montemayor,* 703 F.2d 109, 117 (5th Cir.1983), *cert. denied,* 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983); *United States v. Cauble,* 706 F.2d 1322, 1333 (5th Cir.1983), *cert. denied,* 465 U.S. 1005, 104 S.Ct. 996, 79 L.Ed.2d 229 (1984); *United States v. Webb,* 747 F.2d 278 (5th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1222, 84 L.Ed.2d 362 (1985); *United States v. Giles,* 756 F.2d 1085, 1087 (5th Cir.1985); *United States v. Lennon,* 751 F.2d 737, 743 (5th Cir.1985), *cert. denied,* —— U.S. ——, 105 S.Ct. 2324, 85 L.Ed.2d 842 (1985); *United States v. Stanley,* 765 F.2d 1224, 1239 (5th Cir.1985). The test for validity is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards. *United States v. Webb,* 747 F.2d at 284. Furthermore, it is generally sufficient that an indictment set forth the offense in the words of the statute itself as long as the statutory language unambiguously sets out all the elements necessary to constitute the offense. *Unit-*

---

**2.** This claim was raised in the district court by way of a motion to dismiss the indictment because of its failure to set forth the essential facts constituting the offense. The district court denied this motion.

ed States v. Stanley, 765 F.2d at 1239–40; United States v. Cauble, 706 F.2d at 1351; United States v. Montemayor, 703 F.2d at 117. The language used must be sufficient to inform the accused of the specific offense with which he is charged. *Hamling v. United States*, 418 U.S. at 117–18, 94 S.Ct. at 2907–08, 41 L.Ed.2d at 621.

■ Count one of the indictment charges a conspiracy to commit mail fraud and wire fraud. It well noted that the essential elements of a conspiracy are an agreement by two or more persons to combine efforts for an illegal purpose and an overt act by one of the members in furtherance of the agreement. *United States v. Fischetti*, 450 F.2d 34, 40 (5th Cir.1971), *cert. denied*, 405 U.S. 1016, 92 S.Ct. 1290, 31 L.Ed.2d 478 (1972); *United States v. Evans*, 572 F.2d 455, 483 (5th Cir.1978), *cert. denied*, 439 U.S. 870, 99 S.Ct. 200, 58 L.Ed.2d 182 (1978). In *United States v. Purvis*, 580 F.2d 853, 859 (5th Cir.1978), *cert. denied*, 440 U.S. 914, 99 S.Ct. 1229, 59 L.Ed.2d 463 (1979), the court observed that "conspiracy incorporates willfulness and specific intent." The Supreme Court has also stated that the "intent to accomplish an object cannot be alleged more clearly than by stating that parties conspired to accomplish it." *United States v. Purvis*, 580 F.2d at 859 (citing *Frohwerk v. United States*, 249 U.S. 204, 209, 39 S.Ct. 249, 251, 63 L.Ed. 561 (1919)). A conspiracy indictment is sufficient if it sets out the essential elements of the charge and lists overt acts committed in furtherance of the conspiracy. *United States v. Evans*, 572 F.2d at 483; *Anderson v. United States*, 417 U.S. 211, 227 n. 13, 94 S.Ct. 2253, 2264 n. 13, 41 L.Ed.2d 20 (1974). In the case at bar, the indictment alleges an agreement among the defendants to "knowingly and willfully devise and intend to devise a scheme ... to obtain money by means of false and fraudulent pretenses ... and, for the purpose of executing the [scheme], to knowingly cause to be delivered by mail ... letters, policies, claims, proofs of losses and other matters required in processing insurance coverage and claims," and to further execute the scheme "to transmit ... sounds in interstate commerce by means of the telephone." The indictment also sets out the following specifics as the overt act committed in furtherance of the conspiracy:

> That on or about June 23, 1983 JAMES C. GORDON and WILLIAM DALE BLOUNT had SHIRLEY SINGLETON COPELAND steal his 1979 White Western Star tractor, VIN JTPCPQ1030182, for the purpose of collecting insurance on the truck from the EMMCO INSURANCE COMPANY.

The conspiracy charge clearly sets out the elements of the offense, the specific code sections violated and the names of the co-conspirators. Moreover, the allegations of Count one clearly charge Gordon with specific intent to commit the described offense. *See United States v. Diecidue*, 603 F.2d 535, 546 (5th Cir.1979), *cert. denied*, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 781 (1980).

■ Count two charges mail fraud, 18 U.S.C. § 1341, the essential elements of which are (1) a scheme to defraud, (2) involving a use of the mails, (3) for the purpose of executing the scheme. *United States v. Freeman*, 619 F.2d 1112, 1117 (5th Cir.1980), *cert. denied*, 450 U.S. 910, 101 S.Ct. 1348, 67 L.Ed.2d 334 (1981). The indictment need not specifically charge, but the government must prove, "a specific intent to commit fraud." *United States v. Freeman*, 619 F.2d at 1117 (citing *United States v. Kent*, 608 F.2d 542, 545 n. 3 (5th Cir.1979), *cert. denied*, 446 U.S. 936, 100 S.Ct. 2153, 64 L.Ed.2d 788 (1980)). *See also United States v. Gaspard*, 744 F.2d 438, 440 (5th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 1197, 84 L.Ed.2d 341 (1985). In the present case the indictment charges Gordon with "a scheme ... to defraud and to [fraudulently] obtain money ... from EMMCO Insurance, whereby ... Gordon had his 1979 White Western Star tractor, VIN JTPCPQ1030182, stolen by defendants ... while such vehicle was insured against loss by theft by EMMCO...." The indictment further charges the scheme described involved the

use of the mails, and that the purpose of using the mails was to execute the scheme.

▆▆▆ Finally, Count three charges wire fraud, 18 U.S.C. § 1343, the essential elements of which are (1) a scheme to defraud and (2) the use of interstate communications in furtherance of the scheme. *United States v. Cowart*, 595 F.2d 1023, 1031 n. 10 (5th Cir.1979). The indictment describes the scheme to defraud and alleges occurrence of "a telephone conversation between ... Blount in ... Mississippi and an agent and representative for EMMCO Insurance Company in Dallas, Texas." Thus, it is apparent that the indictment, as a whole, is sufficient in factual particularity and clearly sets out the essential elements of each offense, the specific code sections violated and the name of all co-conspirators.

▆▆▆ Since each count of the indictment contains the essential elements of the offense charged, the second inquiry regarding the indictment is whether it sufficiently apprises the defendant of what he must be prepared to meet. U.S. Supreme Court has held that "[i]t is an elementary principle of criminal pleading that where the definition of an offence, whether it be at common law or by statute, includes generic terms, it is *not* sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species,—it must descend to particulars" (emphasis added). *United States v. Cruikshank*, 2 Otto (92 U.S.) 542, 558, 23 L.Ed. 588, 593 (1875). An indictment not framed to apprise the defendant with reasonable certainty of the nature of the accusation against him "... is defective, although it may follow the language of the statute." *United States v. Simmons*, 6 Otto (96 U.S.) 360, 362, 24 L.Ed. 819, 820 (1877). In an indictment upon a statute, it is not sufficient to set forth the offense in the words of the statute, *unless* those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the *offense intended to be punished. United States v. Carll*, 15 Otto (105 U.S.) 611, 612, 26 L.Ed. 1135 (1881). In other words, the language of the statute may guarantee sufficiency if all required elements are included in the statutory language. *United States v. Stanley*, 765 F.2d at 1239–40; *United States v. Howell*, 719 F.2d 1258, 1261 (5th Cir.1983) (per curiam), *cert. denied,* —— U.S. ——, 104 S.Ct. 2683, 81 L.Ed.2d 878 (1984) (indictment was sufficient since it tracked the language of the statute).

▆▆▆ An indictment tracking the language of the statute is sufficient to charge a violation of 18 U.S.C. § 371. *Grene v. United States*, 360 F.2d 585, 586 (5th Cir. 1966) (per curiam), *cert. denied,* 385 U.S. 978, 87 S.Ct. 522, 17 L.Ed.2d 440 (1966); *Cf. United States v. Murray*, 492 F.2d 178, 192 (9th Cir.1973), *cert. denied,* 419 U.S. 854, 95 S.Ct. 98, 42 L.Ed.2d 87 (1974); *United States v. Marable*, 578 F.2d 151, 154 (5th Cir.1978); *United States v. Herring*, 602 F.2d 1220 (5th Cir.1979), *cert. denied,* 444 U.S. 1046, 100 S.Ct. 734, 62 L.Ed.2d 732 (1980); *United States v. Nichols*, 750 F.2d 1260, 1265 (5th Cir.1985), *cert. denied,* —— U.S. ——, 105 S.Ct. 1186, 84 L.Ed.2d 333 (1985). Similarly, an indictment which tracks the statutory language is sufficient to charge mail fraud, *Kreuter v. United States*, 218 F.2d 532 (5th Cir.1955), *cert. denied,* 349 U.S. 932, 75 S.Ct. 777, 99 L.Ed. 1262 (1955), or wire fraud, *United States v. Abrahams*, 466 F.Supp. 552, 559 (D.Mass.1978). After a careful review of the indictment before us, it is apparent that it tracked the language of the statute and sets forth the particular facts constituting each offense.[3]

---

**3.** The conspiracy charge set forth the time, place and purpose of the conspiracy, along with the names of the conspirators, the means used in the conspiracy and the overt act, including the date of the act, and a description of the truck and of the insurance company.

The mail fraud count set out the date and the place of the offense, the persons involved, the scheme to defraud including the persons who stole the truck and those who had it stolen, along with a description of the truck, the insurance company and the articles mailed.

██ Moreover, a defendant's constitutional *right* to know the offense with which he is charged must be distinguished from a defendant's *need* to know the evidentiary details establishing the facts of such offense, which can be provided through a motion for bill of particulars. *United States v. Freeman*, 619 F.2d at 1118. Although the defendant is entitled to a plain concise statement of the essential facts constituting the offenses charged, the indictment need not provide him with the evidentiary details by which the government plans to establish his guilt. *United States v. Cauble*, 706 F.2d at 1334. However, in the present action, additional factual detail was properly made available to Gordon through the government's compliance with his granted motion for a bill of particulars. *See United States v. Diecidue*, 603 F.2d 535, 563 (5th Cir.1979) (the purpose of a bill of particulars is to inform the defendant of the charge against him in sufficient detail that he may prepare a defense and to minimize surprise at trial); *See also United States v. Evans*, 572 F.2d 455, 483 (5th Cir.1978); *United States v. Debrow*, 346 U.S. 374, 378, 74 S.Ct. 113, 115, 98 L.Ed. 92 (1953). Therefore, the defendant in the case at bar was sufficiently apprised of what he must be prepared to meet and was not hampered in his defense preparation.

██ The third standard by which the sufficiency of the indictment is determined is whether its charge is specific enough to protect the defendant against a subsequent prosecution for the same offense. *United States v. Giles*, 756 F.2d at 1087; *United States v. Stanley*, 765 F.2d at 1239; *United States v. Chavis*, 772 F.2d 100, 110 (5th Cir.1985). The factual details already enumerated and described with specificity serve to protect fully the defendant from being tried again for the same offense. Gordon can rely upon other parts of the present record in the event that future proceedings should be taken against him. *Russell v. United States*, 369 U.S.

749, 764, 82 S.Ct. 1038, 1047, 8 L.Ed.2d 240 (1962). Moreover, the indictment enables Gordon to raise a double jeopardy defense in any subsequent prosecution for the same offense. *See United States v. Giles*, 756 F.2d at 1087. Thus, the defendant is fully protected from again being put in jeopardy for the same offense.

In light of applicable case law, the indictment in the case at bar *sub judice* is more than adequate to conform to minimal constitutional standards, because it contains the essential elements of the offenses, it apprises the defendant of what he must be prepared to meet, and it protects him from subsequent prosecution for the same offense. Therefore, the district court's denial of defendant's motion to dismiss was proper.

## OTHER ALLEGATIONS

### A. *Admissibility of Extrinsic Evidence Under Indictment*

██ Gordon asserts that extrinsic evidence was improperly admitted in that the indictment was couched in terms of a conclusion rather than charging acts and therefore, the issue of intent was removed. The defendant is arguing that without intent being an issue there is no need for extrinsic evidence. Further, Gordon states that the conclusory allegations in the indictment rendered the court's limiting instruction erroneous, confusing and misleading. The question whether the indictment was sufficient has been discussed above in detail and the court had already found the indictment to be sufficient. Moreover, the offenses charged in the indictment required that the government present proof of specific intent. *See United States v. Purvis*, 580 F.2d at 859; *Frohwerk v. United States*, 249 U.S. at 209, 39 S.Ct. at 251.

### B. *Admissibility of Extrinsic Evidence With Appropriate Limiting Instructions*

Gordon asserts that it was error for the government to be permitted, with appropri-

---

The wire fraud count set out the date and place of the offense, the persons involved, the scheme to defraud including the persons who

stole the truck and those that had it stolen, along with a description of the truck, the insurance company and the telephone conversation.

ate limiting instructions, to adduce evidence in its case showing that he had, in another instance, defrauded an insurance company and that such error allowed the jury to convict Gordon alone on erroneous standards. Specifically, the government offered the testimony of Copeland and Lang relating that they had been asked by Gordon to burn his house so that he could collect the insurance on it. Copeland and Lang in fact admitted they had set fire to Gordon's house. Gordon filed a motion in limine at trial. The extrinsic act was committed only a month before the act charged in the indictment, the extrinsic act and the offense charged in the indictment were similar in character, and the persons involved in both instances were the same. The district court ruled that the extrinsic evidence was relevant to the issue of intent that the government was required to show, and that its probative value was not substantially outweighed by any prejudicial impact. Moreover, using the *Pattern Jury Instructions, Criminal Cases, Fifth Circuit Court of Appeals*, the district court judge instructed the jury that they could consider the burning of the house *only* if it *first* found that Gordon committed the particular offenses, and then only for the limited purpose of determining the question of intent.

In deciding whether extrinsic or "similar acts" testimony is admissible, a court must look to Federal Rules of Evidence, Rule 403 and 404(b). The relevancy exception rule, Fed.R.Evid. 403, provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

The character evidence rule, Fed.R.Evid. 404(b), provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in confirmity therewith. It may, however, be admissible for other pur-

poses, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

Both the traditional common law rule and Federal Rule of Evidence 404(b) permit a court to admit evidence of other "acts," as well as other "crimes," for the limited legitimate purpose of proving knowledge or intent as long as the evidence is relevant and its probative value substantially outweighs the danger of unfair prejudice or the other factors noted in Rule 403. *United States v. Evans*, 572 F.2d at 484; *See e.g., United States v. Simmons*, 503 F.2d 831, 834 (5th Cir.1974). This circuit has consistently followed the doctrine on the admissibility of offenses extrinsic to a defendant's indictment to prove criminal intent articulated in *United States v. Beechum*, 582 F.2d 898 (5th Cir.1978) (en banc), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979); *Beechum* establishes a two-part test:

1. It must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character.

2. The evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of Rule 403.

582 F.2d at 911.

■ Similarity of the extrinsic offense to the offense charged is the standard by which relevancy is measured under Rule 404(b). 582 F.2d at 911. In the context of a claim that the extrinsic offense is relevant to the issue of intent, as is the case herein, relevancy is determined by comparing the state of mind of the defendant in perpetrating the respective offenses. The reasoning is that because the defendant had unlawful intent in the extrinsic offense, it is less likely that he had lawful intent in the present offense. 582 F.2d at 941. A finding that the offenses involved the same state of mind renders the extrinsic offense relevant to an issue other than character because it lessens the likelihood

that the defendant acted with lawful intent in connection with the charged offense. *United States v. Beechum,* 582 F.2d at 911.

The similarity and, hence, the relevancy of Gordon's extrinsic offenses to the offenses charged in the present case is undeniable. Gordon's prior attempt to defraud an insurance company meets the relevancy requirement because intent to defraud an insurance company was an issue. The state of mind inherent in the commission of such nearly identical offenses would necessarily be the same. As such the first part of the *Beechum* test was clearly satisfied.

■■■■■ The next issue is whether the probative value of the extrinsic offense evidence was substantially outweighed by the danger of unfair prejudice. Rule 404(b) evidence is particularly probative where the government has charged conspiracy. *United States v. Sampol,* 636 F.2d 621, 659 n. 23 (D.C.Cir.1980). In the context of a conspiracy case, the mere entry of a not guilty plea sufficiently raises the issue of intent to justify the admissibility of extrin sic offense evidence. *United States v. Kopituk,* 690 F.2d 1289, 1334–35 (11th Cir. 1982), *cert. denied,* 461 U.S. 928, 103 S.Ct. 2089, 77 L.Ed.2d 300 (1983); *United States v. Roberts,* 619 F.2d 379 (5th Cir.1980). Only when the defendant affirmatively takes the issue of intent out of the case is he entitled to an exclusion of the evidence. *United States v. Roberts,* 619 F.2d at 383, *quoting United States v. Williams,* 577 F.2d 188, 191 (2d Cir.1978), *cert. denied,* 439 U.S. 868, 99 S.Ct. 196, 58 L.Ed.2d 179 (1978). Evidence of other offenses has been admitted to show intent or knowledge in wire fraud cases, *United States v. Bradford,* 571 F.2d 1351, 1353 (5th Cir.1978), *cert. denied,* 437 U.S. 908, 98 S.Ct. 3100, 57 L.Ed.2d 1140 (1978), and in mail fraud actions, *United States v. Jackson,* 536 F.2d 628, 631 (5th Cir.1976). Because the evidence of Gordon's extrinsic act was relevant to Gordon's intent and because its

probative value outweighed any danger of unfair prejudice to Gordon, the trial court did not abuse its discretion in admitting the evidence. *See also United States v. Merida,* 765 F.2d 1205, 1221–22 (5th Cir.1985).

■■■■■ Although we are not convinced that the district court abused its discretion in admitting this evidence, *See United States v. Brown,* 547 F.2d 1264, 1266 (5th Cir.1977), we need not reach that question because even if the admission could be considered an error, the conviction would still be upheld since even the improper admission of such evidence may be cured by appropriate limiting instructions. *United States v. Evans,* 572 F.2d at 484. The limiting instruction given by the district court in this matter was taken from the *Pattern Jury Instructions, Criminal Cases, Fifth Circuit Court of Appeals.* When evaluating the impact of jury instructions, they must be construed in the context of all the judge's instructions in the case and not in an isolated or piecemeal fashion. *United States v. Evans,* 572 F.2d at 484; *United States v. Bloom,* 538 F.2d 704, 710 (5th Cir.1976), *cert. denied,* 429 U.S. 1074, 97 S.Ct. 814, 50 L.Ed.2d 792 (1977). In *Evans,* which is an "extrinsic act" case similar to the present action, the Fifth Circuit found that the district court's instructions evaluated in their total context made it clear that the evidence of a similar extraneous act could be considered, if indeed it was considered at all, for the limited purpose countenanced by the common law rule and codified in Fed.R.Evid. 404(b). 572 F.2d at 484–85. Like the *Evans* district judge, the *Gordon* district court charged the jury that the similar extrinsic act could not be considered evidence that an act charged in the indictment was committed, but could be considered only for the purpose of showing intent with which a charged act was committed. 572 F.2d at 485.[4] The limiting instruction given by the

---

**4.** The *Gordon* district judge gave the following limiting instruction:

During the course of the trial, testimony or evidence was received with respect to the defendant Gordon having his home burned to col-

lect insurance on it. These offenses are not charged in the indictment in this case but would at most constitute evidence of similar acts in relation to these alleged in the indictment. Evidence that an act was done at one time or on

district court evaluated in the context of all the judge's instructions was proper and correct.[5]

### C. Cross-examination of Government Witness

Appellant Gordon contends that the trial judge unduly restricted the cross-examination of a government witness, Thomas Lang. Gordon asserts that he was cut-off from exploring the details of Lang's "deal" with the government to testify in this action. Lang was a defendant in a separate action charging Gordon with defrauding his insurer by having his house burned. The government witness entered a guilty plea to that charge and executed a "memorandum of understanding" with the government whereby he agreed to testify in the present case in exchange for a recommendation by the government for a lighter or preferred treatment. Lang did testify at trial that he and Copeland did in fact set fire to Gordon's house.

▬▬▬ Limitation of the scope and extent of cross-examination is a matter committed to the sound discretion of the trial judge reviewable only for a clear abuse of that discretion. *United States v. Merida,* 765 F.2d 1205, 1217 (5th Cir.1985); *United States v. Sudderth,* 681 F.2d 990, 996 (5th Cir.1982). In the case at bar, the *Gordon* trial judge ruled that certain portions of Lang's statement made to an FBI agent in another district attacking the credibility of co-conspirator Copeland by extrinsic evidence be excised and not brought out by Gordon on cross-examination of Lang pursuant to Federal Rules of Evidence 608(b).[6] It is a well settled concept that for a trial court to permit the introduction of extrinsic evidence to prove misconduct that did not result in a conviction constitutes reversible error. *United States v. Reed,* 715 F.2d 870, 876 (5th Cir.1983); *United States v. Cluck,* 544 F.2d 195 (5th Cir.1976). Copeland's "misconduct" did not result in a conviction. Thus, the trial court properly ruled that such questioning would amount to attacking the credibility of the witness Copeland by extrinsic evidence, which is prohibited by Rule 608(b) and ordered that

---

one occasion is not any evidence or proof whatever that a similar act was done at another time or on another occasion. That is to say, evidence that a defendant may have committed an act similar to the acts alleged in the indictment may not be considered by the jury in determining whether the accused in fact committed any act charged in the indictment, nor may evidence of some other act of a like nature be considered for any other purpose whatever unless the jury first finds that the other evidence in the case, standing alone, establishes beyond a reasonable doubt that the accused did the particular act charged in the particular count of the indictment then under deliberation.

If the jury should find beyond a reasonable doubt from other evidence in the case that the accused did the act charged in the particular count under deliberation, then the jury may consider evidence as to an alleged act of a like nature in determining the state of mind or intent with which the accused did the act charged in the particular count; and where proof of an alleged act of a like nature is established by evidence which is clear and conclusive, the jury may but is not obliged to draw the inference and find that in doing the act charged in the particular count under deliberation, the accused acted willfully and not because of mistake or accident or other innocent reasons. (Trial transcript, pgs. 351–352).

5. Alternatively, even had there been an error in the admission of these similar extrinsic acts, in view of the overwhelming evidence of Gordon's guilt the error would have been harmless. *United States v. Evans,* 572 F.2d 455, 485 n. 40 (5th Cir.1978), *cert. denied,* 439 U.S. 870, 99 S.Ct. 200, 58 L.Ed.2d 182 (1978); *United States v. Roland,* 449 F.2d 1281, 1282 (5th Cir.1971); *See also United States v. Merida,* 765 F.2d 1205, 1222 (5th Cir.1985).

6. Fed.R.Evid. 608(b) provides:

Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

The giving of testimony, whether by an accused or by any other witness, does not operate as a waiver of his privilege against self-incrimination when examined with respect to matters which relate only to credibility.

those portions of Lang's statements be excised and not brought out by Gordon on cross-examination. Moreover, Rule 404(b) provides that "Evidence of other crimes ... is not admissible to prove the character of a person in order to show that he acted in conformity therewith." The *Gordon* trial judge did not abuse his discretion.

■ Appellant Gordon also asserts that he was entitled under the law to fully develop the facts surrounding the subject matter of Lang's plea of guilty set forth in the memorandum of understanding. After review of the trial transcript, it is apparent that Gordon was not limited in his cross-examination of the government witness Lang concerning the "deal" Lang made with the prosecution. Appellant introduced into evidence Lang's memorandum of understanding he made with the government and questioned Lang extensively regarding its effect in motivating him to testify against Gordon. Moreover, Lang's prior convictions were permitted by the Court to be explored by appellant pursuant to Rule 609. *See United States v. Bray,* 445 F.2d 178, 182 (5th Cir.1971), *cert. denied,* 404 U.S. 1002, 92 S.Ct. 571, 30 L.Ed.2d 555 (1971); *Beaudine v. United States,* 368 F.2d 417, 421 (5th Cir.1966); *See also United States v. Tumblin,* 551 F.2d 1001 (5th Cir.1977). Such examination is limited to the number of convictions, the nature of the crimes and the dates and times of the convictions. *United States v. Bray,* 445 F.2d at 182; *Beaudine v. United States,* 368 F.2d at 421. The cross-examination was properly limited when Gordon's counsel attempted to question Lang regarding the particular facts of Lang's previous offenses. Accordingly, we do not find that Gordon was prejudiced in any way by the proper limitations placed on Gordon in his cross-examination of government witness Lang.

#### D. *Jury Verdict*

Appellant asserts that the lower court inadvertently allowed a situation to develop which forced the jury to reach an improper compromise verdict inconsistent with the evidence and contrary to the law. Gordon argues that Blount's involvement in the scheme to defraud was greater than his own involvement; thus it is inexplicable how or why the jury could reach a verdict acquitting Blount but convicting him. The appellant suggests that the verdict can only be explained in terms of the extrinsic evidence being "improperly" admitted; however, the allegation that the extrinsic evidence was improperly admitted has already been addressed in sections A and B entitled "Other Allegations".

■ It is well settled in this circuit that consistency of verdicts is not required and no conclusion can be drawn as to how the jury viewed evidence based on acquittal of other defendants. *United States v. Young Brothers, Inc.,* 728 F.2d 682, 688 (5th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 246, 83 L.Ed.2d 184 (1984); *United States v. Cargo Service Stations, Inc.,* 657 F.2d 676, 685 (5th Cir.1981), *cert. denied,* 455 U.S. 1017, 102 S.Ct. 1712, 72 L.Ed.2d 135 (1982). Even if the verdicts were inconsistent, such would not be fatal. Juries are free to return inconsistent verdicts, for whatever reason, provided their convictions are supported by adequate evidence. *United States v. Merida,* 765 F.2d at 1220; *See also United States v. Powell,* —— U.S. ——, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984). Thus, it is immaterial "whether the jury's verdict was the result of carelessness or compromise." *United States v. Young Brothers, Inc.,* 728 F.2d at 688. Moreover, it is the jury's province to judge the credibility of the witnesses and it would be improper for the court to speculate or try to second guess the jury. 728 F.2d at 688. *See also United States v. Merida,* 765 F.2d at 1220. Gordon's conviction is adequately supported by the evidence presented at trial.

The defendant further suggests that the jury was forced to arrive at an improper compromise verdict because the court gave the jury the modified *Allen* charge after the jury on several occasions during a period of approximately eight hours of actual deliberations told the court that it was deadlocked and it was not making any

progress towards arriving at a verdict. Gordon objected to the court giving the modified *Allen* charge or any other charge. The court overruled Gordon's objection and gave the modified *Allen* charge. The jury retired for approximately three and one-half more hours of deliberations, after which they returned a guilty verdict against Gordon.

 It appears that appellant is suggesting that the giving of the modified *Allen* charge was "coercive" under the circumstances. The trial judge is vested with broad discretion to evaluate whether an *Allen* charge is likely to coerce a jury into returning a verdict it would not otherwise return. *United States v. Nichols*, 750 F.2d at 1266. We conclude the trial judge did not abuse his discretion.

Moreover, this Court has repeatedly upheld the use of the modified *Allen* charge. *United States v. Jennings*, 724 F.2d 436, 447 (5th Cir.1984), *cert. denied*, — U.S. ——, 104 S.Ct. 2682, 81 L.Ed.2d 877 (1984); *See e.g., United States v. Vincent*, 648 F.2d 1046, 1049 (5th Cir.1981); *United States v. Zicree*, 605 F.2d 1381, 1390 (5th Cir.1979), *cert. denied*, 445 U.S. 966, 100 S.Ct. 1656, 64 L.Ed.2d 242 (1980). The charge has also been upheld in multi-count indictments. *United States v. Jennings*, 724 F.2d at 447; *See e.g., United States v. Blevinal*, 607 F.2d 1124 (5th Cir.1979), *cert. denied*, 445 U.S. 928, 100 S.Ct. 1315, 63 L.Ed.2d 761 (1980). We, therefore, find no misuse of the charge under the facts of this case nor do we find the jury's verdict was without rhyme or reason.

## CONCLUSION

In summary, Gordon's conviction under Counts one, two and three of the indictment must be, and are AFFIRMED.