UNITED STATES of America,
Appellee,

v.

Ronald Henry LUDWIG, Appellant.

UNITED STATES of America,
Appellee,

v.

Thomas James COLONNA, Appellant.

Nos. 75–1335, 75–1358.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 12, 1975.

Decided Oct. 8, 1975.
Certiorari Denied Jan. 19, 1976.
See 96 S.Ct. 861.

C. John Pleban, St. Louis, Mo., for appellants.

Richard E. Coughlin, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before MATTHES, Senior Circuit Judge, and HEANEY and STEPHENSON, Circuit Judges.

MATTHES, Senior Circuit Judge.

Defendants Ronald Henry Ludwig and Thomas James Colonna were prosecuted under a two-count indictment charging that they had caused to be transported in interstate commerce two checks, which they knew to have been converted and taken by fraud, in violation of 18 U.S.C. § 2314. A jury trial was waived, and the matter was submitted to the district court on a written stipulation.[1] In a memorandum opinion reported at 393 F.Supp. 1333, Judge Meredith found the defendants guilty as charged. From the entry of judgment upon that finding, defendants have taken these appeals.

The factual stipulation on which the case was tried raised for consideration one legal issue: whether the government must prove, in order to sustain a conviction under 18 U.S.C. § 2314, that there was some reasonable foreseeability that the instruments of the criminal fraud would travel in interstate commerce. The district court held that there was no such requirement of proof. This same legal issue is the sole contention raised on appeal. For the reasons stated below, we affirm the judgment of the district court.

I

In order to properly frame the legal issue, we briefly review the stipulated facts.

1. Honorable James H. Meredith, Chief Judge, United States District Court for the Eastern District of Missouri.

Appellant Ludwig was the comptroller of Warrenton Products, Inc. He drew two checks upon his employer's bank account at the Commonwealth Bank in Wentzville, Missouri. Both checks, one in the amount of $19,521.71 and the other in the amount of $49,868.71, were made payable to his friend, appellant Colonna. Ludwig and another of the employees of Warrenton Products signed each of the checks.

Ludwig delivered the checks to Colonna, who proceeded to deposit them in his personal account in the Bank of Dutzow in Dutzow, Missouri. The Bank of Dutzow forwarded the checks by mail to the Stockyards National Bank of National City, Illinois. This transaction was in accord with the ordinary business practices of the Bank of Dutzow: the Stockyards Bank had been the "correspondent bank" for the Dutzow Bank for 31 years, and all checks received by the Dutzow Bank were cleared through the Stockyards Bank. In the instant case, Stockyards then forwarded the checks to the First National Bank in St. Louis, Missouri, which in turn forwarded them to the Commonwealth Bank in Wentzville. Both checks were honored and paid by the Commonwealth Bank. It is undisputed that appellants individually received the proceeds of the two checks, that they had no right to such proceeds, and that, as the district court found, "their actions amount to unlawful con-version of the funds of Warrenton Products, Inc." 393 F.Supp. at 1333.

Because of the local business practice by which the Dutzow Bank forwarded to the Stockyards Bank all its checks, the checks involved in appellants' fraudulent scheme entered the stream of interstate commerce. There is no evidence in the stipulation that appellants had knowledge that their scheme would take on this interstate character. Indeed, because the checks were drawn on a Missouri bank and deposited in a Missouri bank, the prospect that they would travel out of state would seem, as to appellants, entirely fortuitous. In view of the government's failure to show that the interstate transport was even reasonably foreseeable, appellants urge that the evidence under 18 U.S.C. § 2314 was insufficient and that their convictions must be reversed.

## II

Section 2314 of Title 18, the so-called National Stolen Property Act, makes it unlawful for one to transport or cause to be transported in interstate commerce enumerated types of property known to have been stolen or obtained by fraud.[2] *Pereira v. United States*, 347 U.S. 1, 9, 74 S.Ct. 358, 98 L.Ed. 435 (1954). Whether the section requires, at a minimum, that such interstate transportation be reasonably foreseeable is, of course, a question of congressional intent.

2. There is a difference between the parties as to whether appellants were indicted under the first or second paragraph of § 2314. The first paragraph provides:

Whoever transports in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud;

\* \* \* \* \* \*

Shall be fined not more than $10,000 or imprisoned not more than ten years, or both. The second paragraph provides:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transports or causes to be transported, or induces any person to travel in, or to be transported in interstate commerce in the execution or concealment of a scheme or artifice to defraud that person of money or property having a value of $5,000 or more;

\* \* \* \* \* \*

Shall be fined not more than $10,000 or imprisoned not more than ten years, or both. This disagreement is not relevant to the lone issue presented on this appeal. In *Pereira v. United States*, 347 U.S. 1, 8, 74 S.Ct. 358, 98 L.Ed. 435 (1954), the Supreme Court held that the first paragraph of § 2314 encompassed both transporting and causing to be transported. Moreover, neither paragraph explicitly includes any element of knowledge or reasonable foreseeability with respect to the act of transportation. Thus, the nature of the required transporting act is the same under both paragraphs.

The case authority indicates that the intent of Congress in enacting the National Stolen Property Act was to provide a means whereby federal authority could be invoked to punish unlawful deprivations of property which, by virtue of their interstate character, might escape the prosecutorial efforts of the states. As stated by the Supreme Court in *United States v. Sheridan*, 329 U.S. 379, 384, 67 S.Ct. 332, 335, 91 L.Ed. 359 (1946), in reference to the statutory predecessor of § 2314:

> Congress had in mind preventing further frauds or the completion of frauds partially executed. But it also contemplated coming to the aid of the states in detecting and punishing criminals whose offenses are complete under state law, but who utilize the channels of interstate commerce to make a successful get away and thus make the state's detecting and punitive processes impotent.

In the subsequent cases of *Lyda v. United States*, 279 F.2d 461, 464 (5th Cir. 1960), the Fifth Circuit emphasized the broad reach of § 2314 with respect to unlawful deprivations of property, a reach limited only by the subsequent fact of transportation in interstate commerce:

> * * * The aim of the statute is, of course, to prohibit the use of interstate transportation facilities for goods having certain unlawful qualities. This reflects a congressional purpose to reach all ways by which an owner is wrongfully deprived of the use or benefits of the use of his property. * * * Congress by the use of broad terms was trying to make clear that if a person was deprived of his property by unlawful means * * * by fraud, swindling, or by conversion by one rightfully in possession, the subsequent transportation of such goods in interstate commerce was prohibited as a crime.

■ These observations as to congressional intent lead to the conclusion that the requirement of interstate transportation under § 2314 was intended merely to supply a constitutional basis for the exercise of federal power. As aptly stated by the Ninth Circuit in *United States v. Roselli*, 432 F.2d 879, 891 (1970), *cert. denied*, 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828 (1971):

> * * * section 2314 is aimed at the evils of theft, fraud, and counterfeiting and not at the regulation of interstate transportation. Suppression of movement of the fruits of theft and fraud is only the means to the end of suppressing theft and fraud themselves. The sole reason for conditioning the statutes' prohibitions upon use of interstate commerce is to provide a constitutional basis for the exercise of federal power.

■ Since interstate transportation is merely the linchpin for federal jurisdiction and bears no relationship, in terms of culpability, to the underlying criminal acts which are the objects of § 2314, it follows that the government should not have to prove that the interstate transport was in any way reasonably foreseeable. Of course, this conclusion is in accord with the wording of the statute, which does not by its terms include any requirement of reasonable foreseeability as to the interstate element of the offense. More important, several appellate cases have held that the fact of interstate transportation, without more, is sufficient under the statute. In *United States v. Powers*, 437 F.2d 1160, 1161 (9th Cir. 1971), for example, the Ninth Circuit observed:

> There is no requirement under 18 U.S.C. § 2314 that the accused know, foresee, or intend that instrumentalities of interstate commerce will be used.

See, also, *United States v. White*, 451 F.2d 559, 559–60 (6th Cir. 1971), *cert. denied*, 405 U.S. 1071, 92 S.Ct. 1522, 31 L.Ed.2d 804 (1972); *United States v. Roselli*, *supra* at 891; *United States v. Mingoia*, 424 F.2d 710, 713 (2nd Cir. 1970); *United States v. Kierschke*, 315 F.2d 315, 317 (6th Cir. 1963); *United States v. Tannuzzo*, 174 F.2d 177, 180

(2nd Cir.), *cert. denied*, 338 U.S. 815, 70 S.Ct. 38, 94 L.Ed. 493 (1949).

Appellants' insistence that reasonable foreseeability of interstate transportation is required by the statute is principally derived from cases in which the fraudulently obtained check is drawn on a bank in one state and deposited by the accused in a bank in another state. In such cases, the courts have noted the inevitability of the transport of the check in interstate commerce, and have discussed the evident foreseeability that the accused's act would take on an interstate character. *See Pereira v. United States, supra*, 347 U.S. at 9, 74 S.Ct. 358; *United States v. Sheridan, supra*, 329 U.S. at 391, 67 S.Ct. 332. *See also United States v. Johnson*, 504 F.2d 622, 626–27 (7th Cir. 1974) (negotiation of money orders); *United States v. Knippenberg*, 502 F.2d 1056, 1060 (7th Cir. 1974) (personal transportation of checks); *United States v. Masters*, 456 F.2d 1060, 1061–62 (9th Cir. 1972) (negotiation of counterfeit stock securities); *United States v. Scandifia*, 390 F.2d 244, 249 (2nd Cir. 1968), vacated on other grounds, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1969) (personal transportation of counterfeit bonds).

The discussion of imputed knowledge in these cases should not be read, however, as authority for the proposition that there is a *requirement* of reasonable foreseeability under the statute. The issue is not squarely presented when the. facts of the case show reasonable foreseeability in any event. Of course, the circumstances of the instant case, involving as they do transactions which are on their face intrastate, afford no such decisional latitude.

### III

We have found no previous case in which the drawee bank and the depository bank were located in the same state, and thus we have found no case in which the issue of reasonable foreseeability has been so sharply presented as here. For the reasons stated in the preceding discussion, we hold that there is no statuto-

ry requirement that the government prove that the prospect of interstate transport was reasonably foreseeable.

Accordingly, the stipulated evidence was sufficient to sustain the conviction. The judgment of the district court is affirmed.