UNITED STATES of America, Plaintiff,

v.

Lawrence W. WRIGHT, Defendant.

No. CRIM.A.01–63–RRM.

United States District Court, D. Delaware.

March 22, 2002.

---

108. *Id.*

Colm F. Connolly, Esquire, United States Attorney and Richard G. Andrews, Esquire, First Assistant United States Attorney, United States Department of Justice: United States Attorney's Office, Wilmington, Delaware; counsel for United States.

Stephen B. Potter, Esquire and Jennifer Kate Aaronson, Esquire, Potter, Carmine & Leonard, P.A., Wilmington, Delaware; counsel for defendant, Lawrence Wright.

## MEMORANDUM OPINION

McKELVIE, District Judge.

This is a criminal case. On September 25, 2001, the Grand Jury returned a nineteen-count indictment against the defendant, Lawrence W. Wright. Count I of the indictment alleges that Wright conspired to commit interstate transportation of stolen property in violation of 18 U.S.C. § 371. Counts II through IV charge Wright with the interstate transportation of stolen property in violation of 18 U.S.C. § 2314 and § 2. Counts V through VIII alleged that Wright laundered monetary instruments in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and § 2. Counts IX through XVII charge Wright with bribery concerning programs receiving federal funds in violation of 18 U.S.C. § 666(a)(2) and § 2 (Counts IX–XVII). Last, Counts XVIII and XIX charge Wright with knowingly and willfully making a false statement in connection with a matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, in violation of 18 U.S.C. § 1001.

On October 25, 2001, Wright moved to dismiss Counts I through XVII of the Indictment. Wright argued that Counts I through XVII must be dismissed because each count fails to allege that Wright acted "willfully" as required by 18 U.S.C. § 2(b). On October 30, 2001, the Government filed its response, contending that willfulness is not a necessary element of the conspiracy and interstate transportation of stolen property counts, the money laundering counts, or the bribery counts.

On November 2, 2001, the court heard oral argument on Wright's motion to dismiss. At the request of defense counsel, the court agreed to accept further written argument on Wright's motion to dismiss. Thereafter, Wright filed an opening brief on December 26, 2001.

In his briefing and at oral argument, Wright makes two arguments in support of his motion to dismiss. First, Wright argues that Counts I through VIII of the Indictment (the conspiracy count, the interstate transportation of stolen property counts, and the money laundering counts) must be dismissed for failure to state the necessary element of "willfulness" required by 18 U.S.C. § 2(b). Wright contends that because the indictment does not allege, nor will the Government seek to prove, that Wright knew that he caused the stolen property to travel in interstate commerce, those counts must be dismissed. Second, Wright argues that Counts IX—XVII (the bribery counts) also must be dismissed as the court lacks subject matter jurisdiction because there is no connection between the offense conduct and federal funds or a federal program.

The Government filed an answering brief on January 15, 2002. Therein, as to Wright's "wilfulness" argument, the Government contends that under applicable case law the crossing of state lines is merely a jurisdictional element that must be alleged and proved, and that therefore no state of mind requirement attaches to that element. Second, as to Wright's argument on the federal funds issue, the Government responds that it would prove that the federal Government gave the Delaware Department of Transportation ("DelDOT") roughly $170 million in each year during the relevant periods. It asserts that there are specific federal funds that are matched to specific transportation related programs, and that this is sufficient to meet the requirement of § 666. Wright filed his reply soon thereafter on January 23, 2002.

Wright's motion to dismiss the indictment is now fully briefed. This is the court's decision on the motion.[1]

## I. BACKGROUND

The indictment charges that on three separate occasions (July 20, 1999, October 29, 1999, and July 25, 2000), Wright deposited checks drawn by the City of Wilmington and payable to New Mount Olive Baptist Church into a church account ("the Fire Account") at Sun National Bank located at 13th and Market Streets in Wilmington Delaware. The checks, in total amount of $149,449.00, were authorized by the now deceased State Legislator, Al O. Plant, Sr.

The indictment charges that Wright wrote a number of checks on the Fire Account to himself and deposited those checks into another church account ("the Pastor's Account") at Sun National Bank, which is located at 13th and Market Streets in Wilmington, Delaware. Wright wrote checks on the Pastor's Account, some of which were payable to Representative Plant, the official who had arranged to give the money to New Mount Olive Baptist Church. The checks were deposited into Plant's account the same branch of Sun National Bank in Wilmington, Delaware.

As a basis for subject matter jurisdiction over the interstate transportation of stolen property counts, the Government alleges that each of the checks identified above was sent by Sun National Bank to Pennsylvania for "clearing." It contends that Wright caused transportation in interstate commerce by "causing the checks to be deposited into Sun National Bank" because

---

1. The court's opinion will focus on Wright's arguments in support of his motion that he presented at oral argument and in subsequent briefing. While Wright raised some additional arguments in his earlier filed motion to dismiss, the court assumes that these earlier arguments are subsumed by the two more refined arguments presented at oral argument, which Wright has chosen to pursue.

Sun National Bank sent the checks to Pennsylvania for clearing. *See* Government's Response to Wright's Motion for Bill of Particulars, ¶ 7(d). The Government, however, stipulates that it will present no evidence at trial that Wright knew Sun National Bank sent its checks to Pennsylvania for "clearing" or that Wright knew the checks would travel outside of the State of Delaware or in interstate commerce.

The City of Wilmington checks payable to New Mount Olive Baptist Church were a distribution of State of Delaware Suburban Street Funds. To satisfy the elements of—and as a basis for subject matter jurisdiction over—the bribery counts, which require the agency at issue to be in receipt of federal funds in excess of $10,000.00 in one year, *see* 18 U.S.C. § 666, the Government stipulates [2] that federal funds from the Federal Highway Administration (FHWA) were matched with Suburban Street Funds for transportation related projects. Four particular projects were: (1) Project No. 99–200–02 (construction of a bike/pedestrian walkway in Delaware City) on which the FHWA contributed about $460,000 and Suburban Street Funds about $50,000; (2) Project No. 99–200–21 (Centerville bike/pedestrian improvements) on which the FHWA contributed about $18,000 and Suburban Street Funds about $2,500; (3) Project No. 99–200–25 (sidewalk construction in North Wilmington) on which the FHWA contributed about $2,500 and Suburban Street Funds about $600; Project No. 99–200–26 (sidewalk construction on Old Lancaster Pike) on which the FHWA contributed about $16,000 and Suburban Street Funds about $3000.

The Government further stipulates to the following as the source of the Suburban Street Funds. For Fiscal Year 1999, DelDOT spent approximately $148,000,000 of state funds and $106,000,000 of federal funds on "capital projects." For Fiscal Year 2000, DelDOT spent approximately $146,000,000 of state funds and $115,000,000 of federal funds on "capital projects." The sources of the federal funds were various federal programs involving grants, subsidies, and other forms of federal assistance funded through the FHWA, the Federal Transit Administration, and the Federal Aviation Administration. In those years, DelDOT categorized its "capital" projects into approximately seventeen separate categories, one of which was "Suburban Streets." In Fiscal Year 1999, DelDOT spent approximately $17,000,000 on Suburban Streets. The sources of that money were approximately $16,600,000 which was authorized through the State of Delaware "Suburban Streets" legislation, and about $400,000 of federal funds. In Fiscal Year 2000, DelDOT spent approximately $20,400,00 on Suburban Streets. The sources of that money were approximately $20,000,000 which was authorized through the State of Delaware "Suburban Streets" legislation, and about $400,000 of federal funds.

The defense, however, stipulates to the following as the source of the Suburban Street Funds based on the report of R. Thomas Wagner of the State of Delaware Office of Auditor of Accounts and the letter of Gary Fullman, of DelDOT. According to those sources, funding for the Suburban Street program is raised by the State of Delaware by annually issuing bonds pursuant to the Bond and Capital Improvements Act. Subsequently, each state legislator is authorized $300,000 in Suburban Street Funds. Funds are disbursed to various city organization upon the request of the legislator under the oversight of DelDOT. According to Del-

---

2. The stipulations referred to are found in the     Stipulated Facts attached to Wright's brief.

DOT, no federal funds were part of the money allocated by the Bond and Capital Improvements Act for Suburban Streets in the relevant time periods; rather, all funding authorized for the Delaware Suburban Street Funds since its inception in the late 1970's has been "entirely 100% state funds."

## II. *DISCUSSION*

### A. *Is the Indictment Insufficient for Failure to Charge That The Interstate Transportation of Stolen Property Counts were Willful?*

■ Wright argues that Counts I through VIII are insufficient for failure to charge that he acted willfully in transporting stolen property in interstate commerce.[3] Count I of the Indictment alleges a conspiracy to violate 18 U.S.C. § 2314 and 18 U.S.C. § 2. Counts II through IV of the Indictment allege that Wright "caused to be transported in interstate commerce a security of a value of $5,000.00 or more . . . . knowing the same to have been stolen, converted, and taken by fraud in violation of 18 U.S.C. § 2314 and § 2." Counts V through VIII allege violations of the federal money laundering statute, 18 U.S.C. § 1956(a)(1)(B)(i), and § 2 based on the allegation that "knowing that the transaction[s were] designed in whole and in part to conceal and disguise the nature, source, and ownership of the proceeds of specified unlawful activity," Wright wrote a series of checks from the Fire Account of the New Mount Olive Baptist Church to himself so that he could deposit the checks into his personal account and then write checks to Al Plant, "thereby concealing the fact that he was giving Al Plant a share" of the money that Plant had arranged to give to the New Mount Olive Baptist Church. The predicate offense for the § 1956 viola-

tion is the alleged interstate transportation of stolen property (the checks) in violation of 18 U.S.C. § 2314.

■ The allegation in the indictment that Wright "caused to be transported" does not allege that he caused such act to be done "willfully." Wright challenges the sufficiency of Counts I through VIII to charge an offense, contending that the failure to allege that he "willfully" caused a check to be transported in interstate commerce is a fatal defect requiring dismissal of the counts. *See U.S. v. Fischetti,* 450 F.2d 34, 39 (5th Cir.1971) (where willfulness is specifically set out in statute, it is an essential element of the offense and must be included in the indictment). As an indictment "must state all the essential ingredients of the crime," *U.S. v. Beard,* 414 F.2d 1014, 1015 (3d Cir.1969), and may be dismissed if its allegations do not suffice to charge an offense, *see* Fed. R.Crim.P. 12(b)(2), the question presented by Wright's motion is whether willful interstate transportation is an essential element of an indictment alleging counts of interstate transportation of stolen property in violation of 18 U.S.C. § 2314 and § 2.

Section 2314 provides, in relevant part, that:

> Whoever transports, transmits, or transfers in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud; or
>
> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transports or causes to be transported, or induces

---

**3.** In addition to arguing failure to charge, Wright also argues (for the same reasons) that the evidence that the Government has stipu- lated it will raise at trial is insufficient to convict him for the interstate transportation of stolen property offenses.

any person or persons to travel in, or to be transported in interstate or foreign commerce in the execution or concealment of a scheme or artifice to defraud that person or those persons of money or property having a value of $5,000 or more .... Shall be fined under this title or imprisoned not more than ten years, or both.

18 U.S.C. § 2314.

It is apparent from reading the statute that willfulness as to the interstate transportation is not an element of a § 2314 offense. The word willfulness does not appear in the statute. There is a mens rea requirement, but it does not attach to the transportation element. Instead, the required state of mind relates to the defendant's knowledge about the stolen property. The defendant must "know[ ] [the property was] stolen, converted or taken by fraud." 18 U.S.C. § 2314. That state of mind is alleged in the relevant counts.

Here, however, the indictment charges violations of § 2 along with the violations of §§ 2314, 1956, and 666. Section 2(a) of Title 18 makes aiding and abetting an offense. Section 2(b), makes it an offense to willfully cause another to act in a manner that constitutes an offense, providing that "[w]hoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal." 18 U.S.C. § 2(b); *see also United States v. Lennon,* 751 F.2d 737, 741 (5th Cir.1985) ("Section 2(b) applies generally to all federal criminal statutes and prohibits one from causing another to do any act that would be illegal if one did it personally"). Wright's position is that since the Government is charging a violation of 18 U.S.C. § 2 along with a violation of 18 U.S.C. § 2314, and recites that Wright "caused" the checks to be transported across state lines in interstate commerce, the indictment must charge that Wright "willfully caused" that interstate transportation—i.e., that Wright knew that the checks would be transported across state lines.

Wright finds support for this proposition in *United States v. Leppo,* 177 F.3d 93, 96–97 (1st Cir.1999). There the First Circuit indicated that where 18 U.S.C. § 2314 and § 2 are alleged together interstate transportation must be "willful." Wright readily concedes, however, that as the First Circuit pointed out in *Leppo,* a number of circuit courts have instead held that there is no mens rea requirement attached to the interstate transportation of the crime and that proof that the defendant caused interstate transportation of the stolen goods is sufficient. *See United States v. Lack,* 129 F.3d 403, 409–10 (7th Cir.1997); *United States v. Scarborough,* 813 F.2d 1244, 1245–46 (D.C.Cir.1987); *Lennon,* 751 F.2d at 741; *United States v. Newson,* 531 F.2d 979, 980–81 (10th Cir.1976); *United States v. Ludwig,* 523 F.2d 705, 707 (8th Cir.1975); *United States v. White,* 451 F.2d 559, 559–560 (6th Cir.1971); *United States v. Powers,* 437 F.2d 1160, 1161 (9th Cir.1971). The *Leppo* court, in dicta, disagreed with those holdings, finding instead that some degree of knowledge as to the interstate transportation was required. *Leppo,* 177 F.3d at 97.

The Government, in response, contends that under relevant case law, the crossing of state lines is a jurisdictional element and willful interstate transportation need not be charged in the counts charging a violation of 18 U.S.C. § 2. In support of its position, the Government points to the Third Circuit's decision in *United States v. Krogstad,* 576 F.2d 22, 29 (3d Cir.1978), in which the Third Circuit held that " '[w]illfulness' need not be expressly stated in the indictment charging a violation of 18 U.S.C. § 2." Additionally, the Government points to the circuit court opinions cited by

Wright, which indicate that the Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and D.C. Circuits have uniformly held that there is no state of mind requirement in regard to the interstate transportation element of the interstate transportation of stolen property offense. In particular, the Government directs the court to two of the appeals court decisions that have upheld convictions under 18 U.S.C. § 2314 based on similar facts as this case. *See Lack,* 129 F.3d at 409–10 (depositing checks into Wisconsin bank account sufficient to prove the interstate transportation component when bank mailed them out-of-state as part of collection process, as § 2314 does not require "that the defendant have knowledge of the interstate transportation or that such transportation be reasonably foreseeable to him."); *Ludwig,* 523 F.2d at 706–08 (in case where checks which were cleared in Illinois but were both drawn and deposited on Missouri banks, the Government was not required to prove that defendants could reasonably foresee that checks would travel in interstate commerce).

The court begins its analysis by reviewing the relevant Third Circuit authority that the Government asserts has addressed, and thus controls, this issue of law. The Government claims that the Third Circuit's holding in *Krogstad* refutes Wright's position "in that it held that there was no requirement that the indictment use the word 'willfully' . . . . in charging a § 2 violation." *Krogstad,* 576 F.2d at 29.

In *Krogstad,* the defendant was charged and convicted by a jury of causing, aiding, and abetting a federal Internal Revenue Service ("IRS") agent to submit a false audit report to the IRS relating to his company's federal employer tax returns in violation of § 1001 and § 2. *Krogstad,* 576 F.2d at 23. On appeal, Krogstad argued that count of his indictment was "fatally defective for failing to charge that the defendant knowingly or willfully caused

[the IRS agent] to submit a false audit report," because a charge under § 2(b) must use the words "willfully cause." *Id.* at 28. The Third Circuit rejected Krogstad's argument and affirmed the district court's denial of his motion to dismiss, finding the indictment to be sufficient even though it did not specifically include the word "willful." The Third Circuit reasoned that, based on the evidence in the case, if Krogstad caused the IRS agent to submit a false audit report through a bribe, "he likewise aided and abetted [him] in the commission of the substantive offense." *Id.* at 29. Therefore, the court concluded, it was proper to allege a § 2 violation and the district court properly submitted the case to the jury on the § 2 charge. *Id.*

Wright asserts that the holding in *Krogstad* is not fatal to his motion because it is factually distinguishable from this case. He underscores that *Krogstad* involved the bribery of a federal agent under § 666— not interstate transportation of stolen property. This difference is critical because if one bribes a federal officer, it can clearly be inferred that his actions were done with a culpable state of mind. However, if one causes stolen property to cross a state line, it is not necessarily clear that he did so knowingly. Therefore, while the court held that failing to allege willfulness in the indictment was not determinative in a case involving the bribery of a federal agent where evidence of the defendant's knowledge and affirmative conduct made the failure to allege willfulness meaningless, that determination is not applicable to this case. Here, there is no evidence that Wright possessed knowledge as to the interstate nature of his acts.

The court agrees that *Krogstad* is distinguishable from the case at hand. Fairly viewed, *Krogstad* simply stands for the proposition that where the evidence of a

defendant's state of mind is sufficient to prove the requisite state of mind, an indictment which specifically refers to 18 U.S.C. § 2 may be sufficient, notwithstanding its failure to charge that the defendant "knowingly" or "willfully" caused the commission of the predicate crime. In *Krogstad,* the Third Circuit rejected form over substance, refusing to overturn a jury's verdict on appeal based on a technicality in the indictment, where it was clear that sufficient evidence existed to prove the requisite state of mind, even though it had not been alleged. *Krogstad,* however, offers little guidance as to whether when § 2 is alleged in conjunction with the predicate crime of interstate transportation of stolen property, the transportation in interstate commerce must be willfully caused by the defendant.

As no Third Circuit authority appears to be controlling, the court will turn for guidance to other circuit court authority cited by the parties. The great weight of circuit court authority supports the Government's position that the interstate commerce element of § 2314 is solely jurisdictional and that there is no state of mind requirement in regard to the interstate transportation element of the interstate transportation of stolen property offense. A number of circuit courts have held that the fact of interstate transportation without more is sufficient under the statute. *See Powers,* 437 F.2d at 1161 ("There is no requirement under 18 U.S.C. § 2314 that the accused know, foresee, or intend that instrumentalities of interstate commerce are used."); *United States v. Roselli,* 432 F.2d 879, 891 (9th Cir.1970) ("Section 2314 is aimed at the evils of theft, fraud, and counterfeiting and not at the regulation of interstate

transportation .... The sole reason for conditioning the statutes' prohibitions upon the use of interstate commerce is to provide a constitutional basis for the exercise of federal power."); *Ludwig,* 523 F.2d at 707 ("Since interstate transportation is merely the linchpin for federal jurisdiction and bears no relationship, in terms of culpability, to the underlying criminal acts which are the objects of § 2314, it follows that the government should not have to prove that the interstate transportation was in any way reasonably foreseeable."); *Scarborough,* 813 F.2d at 1245–46 (same, citing *Ludwig,* 523 F.2d at 707); *White,* 451 F.2d at 559 ("the bare language of the statute does not require proof of scienter as to interstate transportation as an element of the crime. Nor have courts found any reason for such an interpretation."); *Newson,* 531 F.2d at 981 ("It is ... clearly established that actual knowledge of the interstate transportation of the instrument on part of the defendant is not required.").

Nonetheless, relying on *Leppo,* 177 F.3d at 97, a decision that openly criticizes the above listed circuit court decisions, Wright argues that when a § 2 violation is charged in conjunction with a § 2314 violation, the Government must allege and prove that the interstate transportation itself was done "willfully." The court is not swayed by the dicta in *Leppo*[4] that Wright relies on. Instead the court finds persuasive the Seventh and Eighth Circuit's decisions in the highly similar cases of *Ludwig* and *Lack.* In *Lack,* 129 F.3d at 409–10, the court reasoned that:

First, the second paragraph of § 2314 clearly allows for one to be charged under that statute if one causes stolen

---

4. The *Leppo* court was critical of decisions stating that there was no state of mind requirement with regard to interstate transportation. However, as the Government points out in its brief, it held that it did not have to resolve the issue because the defendant in

that case had intentionally dealt with individuals in other states, so there was evidence of record that he had intended an interstate transportation. *Leppo,* 177 F.3d at 97. Thus, the *Leppo* court's discussion of what state of mind is required, is dicta.

checks to be transported in interstate commerce as part of a scheme or artifice to defraud. The government's decision to include the aiding and abetting theory of § 2(b) in the indictment did not preclude the district court from determining that [the defendant] himself had violated the second paragraph of § 2314 .... Moreover, the Supreme Court had held that an individual may be found guilty under the first paragraph of that statute (when read in conjunction with 18 U.S.C. § 2(b)) even if he did not actually mail or transport anything himself; instead it is sufficient to show that he caused it to be done. *See Pereira v. United States,* 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 [parallel citations omitted] (1954). Thus the nature of the transporting required under either paragraph one or two of § 2314 is the same, and neither paragraph requires that the defendant have knowledge of the interstate transportation or that such transportation be reasonably foreseeable to him.

The court therefore concluded that Lack caused the checks to be mailed across state lines by depositing them in his Wisconsin bank accounts and was therefore guilty under both paragraphs of § 2314.

Applying the same logic to this case, the court disagrees that, by reference to § 2 in the indictment, the Government "shouldered the burden of proving knowledge or reasonable foreseeability of interstate transport." *Lennon,* 751 F.2d at 741. Rather, the interstate element is only included to provide a constitutional basis for the exercise of federal jurisdiction. Section 2 cannot be raised alone; it must be raised in conjunction with a predicate offense. The court can see no reason why charging a § 2 offense in conjunction with a § 2314 offense should alter the state of mind requirement of § 2314, the predicate offense. It is well established by the cases reviewed above that the state of mind requirement of § 2314 does not attach to the interstate nature of the activity. As such, Wright's knowledge or lack thereof regarding the interstate transportation of the checks is immaterial.[5]

## B  *The Bribery Counts: Does the Court have Subject Matter Jurisdiction?*

Counts IX through XVII charge Wright with violations of § 666(a)(2) and § 2, alleging that in a number of transactions, Wright gave money to Representative Plant "with the intent to influence and reward Al O. Plant, Sr., an elected representative of the State of Delaware, in connection with the business of the State of Delaware, namely, the distribution of Suburban Street Funds to the City of Wilmington with the subsequent distribution of funds from the City of Wilmington to the New Mount Olive Baptist Church ...." The indictment further alleges that the "said distribution of Suburban Street Funds [has] a value of more than Five Thousand Dollars ($5000), and the State of Delaware [had] received in a one year period, including [the relevant time periods of the offenses] more then Ten Thousand Dollars ($10,000) under federal programs ... and other forms of federal assistance to the State of Delaware, its Department of Transportation, and the Suburban Street Program ...."

**5.** In its brief, the Government argued both that the indictment was sufficient to charge the interstate transportation of stolen property offense and that the evidence at trial regarding his state of mind would be sufficient to convict Wright. Because the court finds that there is no requirement in §§ 2314 and 2 that Wright know that the checks were transported in interstate commerce, the court did not find it necessary to address the Government's arguments separately.

Section 666(a)(2) of Title 18 sets forth, in relevant part that:

(a) Whoever, if the circumstance described in subsection (b) of this section exists—

. . .

(2) corruptly gives, offers, or agrees to give anything of value to any person, with intent to influence or reward an agent of an organization or of a State, local or Indian tribal government, or any agency thereof, in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more;

shall be fined under this title, imprisoned not more than 10 years, or both.

(b) The circumstance referred to in subsection (a) of this section is that the organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.

18 U.S.C. § 666(a)(2).

### 1. *Wright's Position*

Wright contends in his motion to dismiss the § 666(a)(2) counts of the indictment that the court lacks jurisdiction over these counts insofar as there is no connection between the charged conduct and federal funds or a federal program. Wright relies on *United States v. Zwick,* 199 F.3d 672, 687 (3d Cir.1999), in which the Third Circuit held that " § 666 requires the government prove a federal interest is implicated" by the defendant's conduct. In reaching this conclusion, the *Zwick* court expressed sensitivity to federalism concerns, stating that, if it adopted the position that no connection between the offense conduct and federal funds or programming was required, " § 666 would criminalize a host of corrupt acts committed by State agents . . .

by virtue of the fact that all States receive at least Ten Thousand Dollars ($10,-000) in Federal Funds per year." *Id.* at 686. It refused to adopt this interpretation of the statute, explaining that "[w]e will not transform § 666 into a general federal anti-corruption statute when Congress had not clearly expressed its intention to do so." *Id.*

In *Zwick,* the federal funds consisted of a small disaster relief fund that was used for snow removal and flood control. The bribery was in connection with developers who were being granted sewer access permits and landscaping contracts. As far as the evidence showed, the bribery was completely unrelated to the federal grant or the activities funded by the federal grant. In light of applicable concepts of federalism which mandate setting limits on federal authority and counsel in favor of statutory interpretations that do not dramatically alter the federal-state balance, *see Bass,* 404 U.S. 336, 349, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971), *Zwick* held that in order for § 666 to apply there must be a some connection between the offense conduct and federal funds or programming. *Id.* at 686–87 ("Interpreting § 666 to have no federal interest requirement produces serious concerns as to whether Congress exceeded its power under the Spending Clause in enacting this statute."). It stated, however, that even "a highly attenuated implication of a federal interest will suffice." *Id.* at 687. The court set aside the conviction, but because the trial judge had ruled that no such connection needed to be shown, the court remanded the case to the district court to give the government an opportunity to attempt to show a connection between the bribery activities and a federal interest.

Wright asserts that the Government has identified no federal funds or program here that would satisfy the federal interest

requirement and that the states receipt of more than $10,000 in general funds in 1999 and 2000 is insufficient to establish federal jurisdiction. Moreover, Wright argues that because it is stipulated that the source of the funding for the Suburban Streets Program was "entirely 100% state funds" and the checks written to the New Mount Olive Baptist Church were distributions of Suburban Street Funds, there exists no federal interest in the Suburban Street Fund and this court is therefore without jurisdiction to entertain the counts alleging violations of § 666.

### 2. *The Government's Position*

The Government makes two arguments in opposition to Wright's motion on this issue. First, the Government contends that, to the extent Wright's motion is based on the purported insufficiency of the evidence, a motion to dismiss is an improper vehicle to do so. *See United States v. DeLaurentis*, 230 F.3d 659, 660 (3d Cir. 2000) (unless there is a stipulated record or unless immunity issues are implicated, a pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence); *United States v. Gallagher*, 602 F.2d 1139, 1142 (3d Cir.1979).

Second, the Government contends that in analyzing the extent of connection between the offense conduct and the federal funds that is required by the Third Circuit, the relevant case to consider is not the *Zwick* case relied upon by Wright, but the later Third Circuit case of *United States v. DeLaurentis*. There, the defendant who had accepted bribes was a Supervisor of Police Detectives in a New Jersey town. *DeLaurentis*, 230 F.3d at 662. Among his duties was assisting the New Jersey Division of the Alcoholic Beverage Control in the enforcement of state alcoholic beverage laws. *Id.* The town received federal funds of at least $25,000 per year. The federal funds were received from the De-partment of Justice, and were used by the police department to pay the salary of an additional police officer for street duties. *Id.* The indictment charges that DeLaurentis accepted the bribes in exchange for "interceding with the town council to permit renewal of the license of a particular bar which had been the focus of much police activity because of fighting, drug sales, disorderly conduct, underage drinking [etc.] ...." *Id.*

After the district court dismissed the bribery counts of the indictment, the Government argued on appeal that the dismissal based on an insufficient nexus between the offense conduct and federal funds was improper. The Third Circuit agreed and reversed, holding that the while the "evidence must show some connection between the defendant's bribery activities and the funds supplied by the federal government, or the programs supported by those federal funds... [,] it is not necessary to show that the bribery activities of the defendant actually impacted the federal funds themselves, or had a direct bearing on the expenditures of those funds ...." *Id.* at 661–62; *see also Salinas v. United States*, 522 U.S. 52, 60, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997) (rejecting a constitutional claim against § 666 as generally exceeding the limits of federal power and finding that § 666 "does not require the Government to prove federal funds were involved in the bribery transaction"). The *DeLaurentis* court reasoned that:

> [t]he evidence outlined by the government would permit a rational jury to conclude that the defendant's successful intercession enabled this problem establishment to remain open, necessitating a disproportionate allocation of police manpower .... Indeed, the official records submitted by the government purport to show that, on several occasions, the very same officer whose salary is

being paid with federal funds was dispatched to this problem bar to quell disturbances or make arrests.

*Id.* at 662. The *DeLaurentis* court thus concluded that "[w]hen it supplied the town ... with $75,000 to strengthen its police patrols, the federal government had a legitimate interest in discouraging police corruption affecting the patrol activities it was financing." *Id.* In reaching this conclusion, the Third Circuit distinguished *DeLaurentis* from *Zwick*, which involved federal funds for snow removal and flood control but allegations of bribery relating to sewer access permits and landscaping contracts, as involving bribery that was "totally unrelated to the federal grant or the activities funded by the federal grant [i.e., snow removal and flood control]." *Id.*

The Government expects the evidence in this case to show: (i) that the bribes concerned the state representative's activities in relation to one discrete part of state government, the Suburban Streets Program; (ii) that the State of Delaware spends approximately $18 million of state monies on the Suburban Streets Program, which is one part of DelDOT's capital budget; and (iii) that during the relevant time period, federal funds from the Federal Highway Administration in excess of $10,000 were used to match Suburban Streets funds for four transportation related projects in Delaware, so that some Suburban Streets projects receive funding from both the state and federal governments;[6] and (iv) that the federal Government has in each relevant year, through matching, funded about $400,000 of activities that DelDOT has designated as being in the category of Suburban Streets.

The Government submits that this case is more analogous to *DeLaurentis* than it is to *Zwick*. It argues that in the present case, Wright bribed a state legislator in connection with Suburban Streets funds,

while at the same time the federal government was putting substantial funding—through matching FHWA federal funds—into the same sorts of projects that the "Suburban Streets" program was designed to fund. Thus, the Government urges the court to conclude that there was a federal interest in suburban streets in Delaware, and that the federal government has a legitimate and important interest in discouraging the diversion of state funds from suburban streets by bribery.

### 3. The Court's Analysis

a. *Is it appropriate to entertain Wright's argument at this time?*

■ The Government first argues that to the extent Wright's pre-trial motion challenges the sufficiency of the evidence that will be presented at trial, the motion must be rejected. *See DeLaurentis,* 230 F.3d at 660; *Gallagher,* 602 F.2d at 1142. In *DeLaurentis,* the Third Circuit stated that although "Federal Rule of Criminal Procedure 12(b)(2) authorizes dismissal of an indictment if its allegations do not suffice to charge an offense ... such dismissals may not be predicated upon the insufficiency of the evidence to prove the indictment's charges." *DeLaurentis,* 230 F.3d at 660 (citing *United States v. Sampson,* 371 U.S. 75, 78–79, 83 S.Ct. 173, 9 L.Ed.2d 136).

The *DeLaurentis* court, however, qualified its statement, indicating an exception to the general rule for cases involving "a stipulated record." *DeLaurentis,* 230 F.3d at 660. In addition, as Wright points out, courts have found that when questions of subject matter jurisdiction are raised pre-trial, a court has the authority under Rule 12(b) to make a factual determination regarding subject matter jurisdiction at that time. *See, e.g., United States v. Dransfield,* 913 F.Supp. 702, 707 (E.D.N.Y.1996).

---

**6.** This fact has been stipulated to by the Government. *See* Stipulation of Facts ¶ 11(f).

In the present case, Wright contends that "[a]ll relevant fact on the issue of jurisdiction are stipulated to and before the court" creating an adequate factual record on which to inquire as to whether the court has jurisdiction. Accordingly, as a threshold matter, the court will examine the record before it and entertain Wright's jurisdictional challenge on this basis to the extent the court is comfortable that the facts in the record are sufficient to resolve the issue. In doing so, however, the court will take heed not to overstep its bounds. Should the court, upon reviewing that record, be unsatisfied as to whether it the stipulated record contains sufficient evidence to make the jurisdictional determination, the court will defer action until a more detailed evidentiary record is developed and allow Wright to renew his motion at that time. With this in mind, the court turns to the substance of Wright's challenge.

b. *Is there a sufficient nexus between the bribery activities and a federal interest such that the court may assert jurisdiction over the § 666 counts?*

As the Supreme Court stated in *Salinas*, 522 U.S. at 58, 118 S.Ct. 469, section "666(a)(1)(B) was designed to extend federal bribery prohibitions to bribes offered to state and local officials employed by agencies receiving federal funds." Although the Supreme Court characterized the reach of § 666 as broad, it also suggested that in certain cases constitutional boundaries may limit the scope of § 666.

In *Salinas*, the defendant challenged his conviction under § 666 as unconstitutional in its application to him on federalism grounds, contending that the Government failed to prove that the bribe affected federal funds, for instance by diverting or misappropriating them. The court rejected this argument, finding instead that the statutory language does not require that the money involved in the bribery scheme actually be federal funds or traceable to federal funds. Instead, the plain and broad language of the statute simply requires that the act of bribery be performed upon an organization, government, or agency that is federally funded in an amount over $10,000 during that same year. *Salinas*, 522 U.S. at 60, 118 S.Ct. 469; 18 U.S.C. § 666. The court further held that the statute was constitutional as applied to Salinas and "did not extend federal power beyond its proper bounds," because on the facts of that case there was a sufficient federal interest in the act of bribery.[7] *Salinas*, 522 U.S. at 60, 118 S.Ct. 469.

Although on the facts of *Salinas* the Supreme Court held that § 666 was not unconstitutional as applied to Salinas, it left open the possibility that some constitutional limit was required when it stated that it did "not consider whether the statute requires some other kind of connection between a bribe and the expenditure of federal funds...." 522 U.S. at 59, 118 S.Ct. 469. Some courts have interpreted this statement from *Salinas* as intimating that an interpretation of § 666 that does not require any federal connection at all would be unconstitutional. *See United*

---

**7.** As the Third Circuit explained, in *Salinas*, "the federal government provided funds for physical improvements to a state prison, and paid a per diem for each federal prisoner housed there. A corrections officer accepted bribes to permit a federal prisoner to have conjugal visits. The Supreme Court had no difficulty in concluding that the defendant was properly convicted under § 666." *De-Laurentis*, 230 F.3d at 662. The *Salinas* court noted, "that relationship [between the bribe and federal monies was] close enough to satisfy whatever connection the statute might require." *Salinas*, 522 U.S. at 59, 118 S.Ct. 469.

*States v. McCormack,* 31 F.Supp.2d 176, 185 (D. Mass 1998); *but see United States v. Grossi,* 143 F.3d 348, 350 (7th Cir.1998) (upholding a conviction under § 666 where the defendant, a township supervisor, received kickbacks for making distributions from the town's general assistance program, which received no federal money); *United States v. Dakota,* 188 F.3d 663, 668 (6th Cir.1999) (§ 666 requires no relationship between the illegal activity and the federal funding); *U.S. v. Fernandez,* 282 F.3d 500, 509 (7th Cir.2002) (stating "[w]e do not believe that it is necessary for the government to establish ... a link [between a federal interest and the defendant's fraud]. Section 666 punishes an agent of a local government who obtains through fraud property valued at $5,000, or more, from a local government that receives, in any one-year period, benefits in excess of $10,000 from federal funds.").

While the Sixth and Seventh Circuits appear to reject the application of a federal nexus requirement to § 666, at least the Third Circuit, in the *Zwick* and *DeLaurentis* cases, along with the Second and Fifth Circuits have interpreted *Salinas* as requiring such a nexus. *See Zwick,* 199 F.3d at 687 (holding that "§ 666 requires that the government prove a federal interest is implicated by the defendant's offense conduct"); *DeLaurentis,* 230 F.3d at 661–62 (holding that to convict under § 666, evidence must show some connection between defendant's bribery activities and funds supplied by the federal government, or programs supported by those federal funds); *United States v. Santopietro,* 166 F.3d 88, 93 (2d Cir.1999) (stating that although it was affirming a conviction where the bribe was " 'a threat to the integrity and proper operation of the federal program,' " it "would not permit the Government to use section 666(a)(1)(B) to prosecute a bribe paid to a city's meat inspector in connection with a substantial transaction just because the city's parks depart-

ment had received a federal grant of $10,000."); *United States v. Phillips,* 219 F.3d 404, 411 (5th Cir.2000) (stating that "there must be some nexus between the criminal conduct and the agency receiving federal assistance" and holding that § 666 does not reach misconduct of local officials whose actions do not threaten the integrity of federal funds or programs).

This understanding that there must be a nexus between the offense conduct and the federal funds finds further support in the Supreme Court's more recent decision in *Fischer v. United States,* 529 U.S. 667, 120 S.Ct. 1780, 146 L.Ed.2d 707 (2000), a case which presented the issue of whether a health care provider participating in a Medicare program received "benefits" within meaning of the bribery statute. After finding that the Medicare payments received by a municipal hospital authority were "benefits" within § 666, *see Fischer,* 529 U.S. at 677, 120 S.Ct. 1780, the Court cautioned that:

> Our discussion should not be taken to suggest that federal funds disbursed under an assistance program will result in coverage of all recipient fraud under § 666(b). Any receipt of federal funds can, at some level of generality, be characterized as a benefit. The statute does not employ this broad, almost limitless use of the term. Doing so would turn almost every act of fraud or bribery into a federal offense, upsetting the proper federal balance.

*Id.* at 681, 120 S.Ct. 1780. As the Sixth Circuit recently indicated in *United States v. Suarez,* 263 F.3d 468, 489 (6th Cir.2001), "[t]he best reading of the *Fischer* and *Salinas* cases seems to be that the Supreme Court does not want" an interpretation of § 666 that would make it a "generalized anti-corruption statute under the spending power."

■ Given that the relevant Third Circuit cases, *Zwick* and *DeLaurentis* have

interpreted § 666 as such, the inquiry for the court is whether, under the standards set forth in those cases, there is a sufficient federal nexus in this case. The Government argues that a sufficient nexus exists between the federal funds and the bribery because federal funds are used to match Suburban Street Funds. Wright argues that matching does not establish a sufficient federal connection. Wright submits that the fact that the State of Delaware receives federal funds does not establish the required federal connection to the bribery. He contends that because the Suburban Street Funds themselves are raised wholly from State of Delaware bonds and the bribery related to Suburban Street Funds, that no federal interest is implicated and that, therefore, § 666 cannot be constitutionally applied.

In both *Zwick* and *DeLaurentis*, the Third Circuit analyzed the constitutionality of the § 666 conviction by examining the connection between the defendant's bribery activities and the funds supplied by the federal government in order to determine whether the nexus requirement was met. *Zwick*, 199 F.3d at 688 (finding "no obvious connection" between the two); *DeLaurentis*, 230 F.3d at 662 (finding sufficient connection such that federal interest requirement is met); *see also Santopietro*, 166 F.3d at 93–94 (concluding in case where real estate developers made corrupt payments to defendants to secure influence with federally funded city agencies overseeing housing and urban development programs that nexus requirement was met, but stating that the federal interest requirement "would not permit the Government to use section 666(a)(1)(B) to prosecute a bribe paid to a city's meat inspector in connection with a substantial transaction just because the city's parks department had received a federal grant of $10,000."). Here, Wright's bribery activi-

ties allegedly involved corruptly giving a series of checks to Delaware State Representative Plant, with the intent to influence him in the distribution of Suburban Street Funds to the City of Wilmington with the subsequent distribution of funds from the City of Wilmington to the New Mount Olive Baptist Church. The purported connection between this activity and federal funds is that federal funds are used to match Delaware Suburban Street Funds for a number of transportation related projects.

The main thrust of the cases addressing this issue that the court had reviewed is that the mere fact that a state agency receives federal funding does not alone satisfy the federal interest requirement. The agency receiving the funding must be linked, albeit in some "highly attenuated" manner, to the bribery activity such that a federal interest is fairly implicated. *Zwick*, 199 F.3d at 686–87. The facts here constitute a stronger federal connection than was presented in *Zwick*, but a more attenuated connection than presented in *DeLaurentis*. There are facts that indicate that federal funds were earmarked for certain transportation related projects in Delaware by matching Suburban Street Funds, the funds that the bribery activities relate to. However, while it is stipulated that the federal government in some as yet undisclosed manner matches DelDOT funds for—as the Government puts it— "the same sorts of projects that the 'Suburban Streets' program was designed to fund," it is unclear how or whether the acts of bribery had any effect on projects that drew from those federal funds, such that the Government can claim a legitimate interest in discouraging the diversion of those funds through bribery.[8]

There are further stipulated facts that, in each of Fiscal Year 1999 and 2000, $400,000 of federal funds were allocated to

8. It would be helpful to know, for example, whether the Government matched the Subur-

Suburban Streets. However, the court is mystified as to how to reconcile that fact with the defendant's stipulation that the Suburban Street Funds are strictly 100% state funded. One possible answer revealed from reading Gary Fullman's letter is that the latter statement may be referring only to Suburban Street Funds that are authorized by Delaware legislation, while not addressing whether the state authorized funds for Suburban Streets are supplemented with federal funds.[9] If this is the case, the fact that a portion of the Suburban Street Funds are wholly state funded would not detract from the interest of the federal government in preventing bribery involving its funds.

However, the court need not and should not resort to conjecture. Because the court does not have before it facts that to the court's satisfaction adequately describe the nature and details of this "matching" process, it is impossible at this time for the court to resolve whether the federal interest requirement is met. Accordingly, the court will deny Wright's motion seeking dismissal of Counts IX through XVII, evaluate what further evidence is presented by the Government at trial, and, to the extent necessary, invite counsel to raise the issue in post-trial briefing. At that time, on a fully developed factual record, the court will be better able to rule on this issue.

## III. CONCLUSION

With respect to Counts I through VIII, the court finds that there is no need for the Government to allege or prove Wright's "willfulness" with regard to the interstate element of the charged offenses. With respect to Counts IX through XVII, on the facts presently before the court, the court cannot conclude that the federal interest requirement developed in *Zwick* is not met. Through its discussion, the court hopes to have given the parties sufficient guidance on the facts that they must develop to establish their positions on that issue, so that, if necessary, it may be revisited. Therefore, based on the above findings, the court will deny Wright's motion to dismiss the indictment. The court will issue an order in accordance with this memorandum opinion.

---

ban Street Funds on a fund level and the combined pool of federal and state money were used to fund individual projects, or instead whether federal funds were contributed on a project by project basis. The former would lend greater support to a finding of federal interest.

9. The Government stipulates that in Fiscal Year 1999, of the $17 million spent on Suburban Streets, $16,600,000 was authorized through the State of Delaware Suburban Streets legislation, while $400,000 came from federal funds. A similar stipulation is made for Fiscal Year 2000.